The tract described in the deeds and in the complaint as the "Russell Gold Mine," containing 356 acres, was prior to 5 May, 1902, the property of Mrs. Elizabeth Eames, the wife of plaintiff. The tract described as the "Coggins Meeting House," containing 3 acres, was at said date the property of plaintiff. On 6 May, 1903, W. D. Clark, sheriff of Montgomery County, executed to defendant a deed conveying, by the same metes and bounds set out in the complaint, the "Russell Gold Mine," containing 359 acres. The preamble to the deed is in the following words: "Whereas, at a sale of real estate for the nonpayment of taxes, made in the county aforesaid, on 5 May, 1902, the following described real estate was sold, to wit, 359 acres in Eldorado Township, listed by Richard Eames," etc. In this, and all other parts, the language (3) of the deed conformed to the provisions of the statute (Revisal, sec. 2906). The deed was duly proven and recorded 7 May, 1903.
On 7 May, 1903, defendant C. A. Armstrong and his wife, in consideration of $2,300, executed a deed to plaintiff, conveying, by metes and bounds as in the deed to them, the "Russell Gold Mine," containing 356 acres, and, by a separate description, the "Coggins Meeting House" of 3 acres. This deed was duly proven and recorded, and contains the following covenant: "To have and to hold the aforesaid tracts of land; . . . and the said parties of the first part covenant that they are seized of said premises in fee and have a right to convey the same in fee simple; that the same are free and clear from all encumbrances."
On 9 May, 1903, plaintiff and his wife conveyed both said tracts to George T. Whitney in consideration of $5,000. Plaintiff paid to defendant the consideration of $2,300 named in his deed. Plaintiff alleges that at the time defendant executed the deed of 6 May, 1903, and made the covenant therein, he was not seized of either of the tracts therein conveyed, and had no title thereto, and for breach of said covenant demands as damages the amount of the purchase money. Defendant denies the allegation, and alleges seizin, etc. *Page 3 
In response to issues submitted, the jury found that at the date of the deed the "Coggins Meeting House" was the property of plaintiff, and, under the instructions of the court, found that plaintiff was not entitled to recover any damage on account thereof; that defendant was seized of the "Russell Gold Mine," and that there had been no breach of the covenant in respect thereto.
It was in evidence that plaintiff was desirous of selling both tracts to one Whitney, and had entered into a contract to do so for the sum of $5,000; that his attorney, residing in Salisbury, went to the town of Troy, Montgomery County, for the purpose of examining the title; that a few days thereafter plaintiff met defendant in Troy, and, after some negotiations, agreed to pay him $2,300 for deed with full (4) covenants; that some question was raised in regard to whether the sheriff's deed covered the "Coggins Meeting House," whereupon plaintiff said that, while the land was his, defendant could put it in the deed to satisfy Mr. Whitney, and that no trouble would ever come to him on account of it. Upon the execution of the deed by plaintiff and wife to Whitney, he went into and has continued in the unmolested possession of the land.
His Honor instructed the jury to answer the issues. Judgment was thereupon rendered for defendant. Plaintiff's exceptions are noted in the opinion. Plaintiff appealed.
After stating the case: We were of the opinion, when this case was here at Fall Term, 1906, that the covenant of seizin extended to the "Coggins Meeting House" tract. 142 N.C. 506. It appears that at the time the deed was made by Armstrong to the plaintiff the title to that tract was in the plaintiff, and that this was well known to him. It further appears that plaintiff immediately conveyed the same land to Whitney, who went into possession and remains therein. In Fitch v. Baldwin, 17 Johnson, 166, it is said: "The covenant of seizin extends only to guarantee the bargainee against any title existing in a third person, and which might defeat the estate granted." In Furness v. Williams, 11 Ill. 229, Treat, C. J., says: "It is attempted on the part of defendant to establish a breach of the covenant by proving that he was himself seized, instead of his grantor. The law does not allow this to be done. The covenant of seizin extends only to a title existing in a third person. It does not embrace a title that may be already in the grantee. The grantee is estopped from setting up the title previously acquired against his vendor." Tiedeman Real Prop., sec. 851; Rawle *Page 4 
(5) on Cov., 431; Jones Real Prop., 444; 11 A. E., 442. His Honor, therefore, correctly instructed the jury to answer the issue in regard to that tract.
For the purpose of showing that defendant was not seized of the "Russell Gold Mine" tract, plaintiff sought to attack the deed executed by the sheriff to the defendant of 6 May, 1903. To this end he offered to show that a tender of the taxes, interest, cost, etc., was made by his attorney and the attorney of Mr. Hambley to the defendant on 5 May, 1903, and declined. He further offered to show that plaintiff tendered the amount both to the defendant and the sheriff, and that both declined. He further offered to show that defendant had not given the notice required by the statute before calling for the deed. To each of the questions bearing upon these contentions defendant objected. His Honor ruled "That plaintiff not having shown that he had title to the `Russell Gold Mine' tract of 356 acres at the time of the sale of the same for taxes, on 5 May, 1902, and not having shown that he now claims the same under the person who had the title at the time of such sale, and not having shown that all taxes due upon the property had been paid by him or the person who had the title at the time of the sale, the court held that the plaintiff could not be permitted to question the title which had been acquired by the defendant under the sheriff's tax deed, nor could the plaintiff question the validity of the deed." The objection was sustained, and plaintiff excepted. It will be observed that the land conveyed by defendant to plaintiff was, at the time it was listed for taxation, sold, and the deed executed by the sheriff, the property of Mrs. Eames. The deed recites that it was listed by Richard Eames. This we think, in view of the provisions of section 2894 of Revisal, immaterial. It is therein expressly provided that the fact that the land is listed in the name of some one other than the owner shall not invalidate the deed, unless it is shown that the true owner listed and paid (6) the taxes on it. No evidence was offered that Mrs. Eames did either. The tender to redeem was not made by Mrs. Eames or any one acting for her or claiming under her. That her husband had no "estate or interest" in the land, notwithstanding birth of issue, is settled. Tiddy v. Graves, 126 N.C. 622; Hallyburton v. Slagle,132 N.C. 948. Plaintiff, however, insists that he had a right to show that the defendant failed to give the notice required by section 2003 of Revisal, being sections 15-17, ch. 558, Laws 1901, and thereby invalidated the deed, under the decision of this Court in King v. Cooper, 128 N.C. 347, and Matthews v. Fry, 141 N.C. 586. It will be observed that in both of those cases the controversy was between the owner of the land and the purchaser, whereas section 2909 of Revisal, which is the same as section 20, ch. 558, Laws 1901, provides: "In all controversies, *Page 5 
actions, and proceedings involving the title to real property claimed and held under and by virtue of a deed made substantially as required by this chapter, the person claiming title adverse to the title conveyed by such deed shall be required to prove, in order to defeat the title which such deed purports to convey, either that such real property was not subject to taxation for the year or years named in the deed, or that the taxes had been paid before the sale, or that the property had been redeemed from the sale according to the provisions of this chapter, and that such redemption was had or made for the use and benefit of the persons having the right of redemption under the laws of this State, or that there had been an entire omission to list or assess the property, or to levy the taxes or to sell the property. No person shall be permitted to question the title acquired by a sheriff's deed, made pursuant to this chapter, without first showing that he, or the person under whom he claims, had title to the property at the time of the sale, and that all taxes due upon the property have been paid by such person under whom he claims title." It is clear that the plaintiff never had any title to the property and never had any claim thereto under the owner (7) thereof. He is, in contemplation of law, an absolute stranger to the title. If any effect is to be given to the plain language of the statute, is manifest that his Honor's ruling is correct.
It is difficult to see how or why plaintiff should be permitted, as a volunteer, to come into the court to attack a deed the validity of which can in no possible contingency affect him.
Mrs. Eames, the owner of the property, assuming for the sake of the argument that the defendant's title was not good as against her, has parted with her title, and there is no person in existence who can attack the title of her grantee or disturb his possession.
The facts presented upon the record are peculiar. At the time the land was listed for taxation it was the property of Mrs. Eames. The tax not having been paid on 5 May, 1902, the sheriff sold it for nonpayment of taxes, when the defendant Armstrong became the purchaser. It appears that plaintiff had entered into a contract to sell the land to Mr. Hambley, who represented Mr. Whitney. On 5 May, 1903, Mr. Henderson, who had gone to Troy to investigate the title "in behalf of Richard Eames and Hambley," offered to pay defendant "all the taxes, interest, cost, and penalties," which offer was declined. The same offer was made to the sheriff and declined. A few days after Mr. Henderson's visit to Troy plaintiff went there and, after some negotiation with defendant and his attorneys, agreed to pay him $2,300 and take the deed. Pursuant to this agreement, the deed containing the covenant was delivered and the money paid on 7 May, 1903. Plaintiff, before taking the deed, offered to pay defendant and the sheriff the taxes, etc., which *Page 6 
offer was declined, On 9 May, 1903, the plaintiff and his wife, Mrs. Elizabeth Eames, conveyed the land to Whitney for $5,000, and he went into possession and has remained therein, unmolested. This action was brought 4 March, 1904.
If plaintiff should recover, as he seeks to do, the purchase money paid defendant, he should be required to reconvey to him such title or (8) interest as he acquired by the deed. This he cannot do, because, assuming his contention correct, that the title was not devested out of Mrs. Eames by the tax deed, he has joined with her in conveying his rights to Whitney. While it is true that usually the purchase money is the measure of damages for breach of covenant of seizin, it is equally true that, if the covenantee perfect his title for a less amount, he will recover only the amount paid by him therefor. In this case he and his wife sold to Whitney for $5,000. It does not appear that he paid Mrs. Eames any sum whatever for her interest or title, or whether the whole of the purchase money went to him. It does appear that his contract was to sell the land to Hambley, representing Whitney, for $5,000, and that by reason of acquiring defendant's title he was enabled to carry out his contract. It is certain that he and Mrs. Eames have conveyed to Whitney a perfect title, and that plaintiff cannot put defendant back in the position which he occupied when he made the covenant. This he should be able to do. Rawle Covenants, sec. 184. Is it not clear that, if plaintiff should recover the purchase money upon the theory that defendant had no title, he should reconvey to the defendant?
In Stinson v. Summer, 9 Mass. 150, Parker, J., says: "It would certainly be manifestly against the principles of justice that a grantee should recover either his purchase money or the value of the land against the grantor upon an alleged breach of covenant that nothing passed by the deed, and that he should be considered the owner of the land under the very deed which he alleged to be inoperative."
The plaintiff has conveyed the land to Whitney for an amount more than double the purchase money paid by him to defendant. The fact that his wife joined in the deed, from this point of view, does not affect the question. He cannot restore to defendant the title which he got from him. How, then, can he call upon him to restore the purchase money? It may be, assuming that there was a breach of the covenant, that he could recover such sum as he was required to pay out to perfect his title. In Bank v. Glenn, 68 N.C. 35, it is said: "If (9) there be an outstanding paramount title, which the covenantee purchases, he is not entitled to recover the whole of the purchase money, with interest, but only the amount paid to perfect the title, with interest from date of payment. In other words, when the loss has been less than the purchase money and interest, the plaintiff can recover only *Page 7 
for the actual injury sustained." The language of the Court in that case is applicable here. "The plaintiff does not stand in a very graceful attitude before the Court when it seeks to recover the purchase money after its title to the land has been perfected and when it has by a deed in trust conveyed the same land to secure its debts. The bank is seeking to have the land and the purchase money. To allow it to do so would be grossly inequitable." The purpose of the covenant is indemnity, not speculation.
The defendant, in addition to the defenses to which we have adverted, urges us to reverse the former rulings of the Court that a covenant of seizing does not run with the land. He cites a number of cases in which it is held that the breach is continuing and the right to sue passes with the title and may be prosecuted whenever the paramount title is asserted to the disturbance of the possession of the grantee under the deed containing the covenant. From this position defendant concludes that Whitney is the owner of the covenant and the real party in interest, who alone can sue. It is true, as contended by the learned counsel, that the law has been so held by a number of highly respectable courts. The other view has always been held by this Court, and we are not disposed to reverse these decisions. Mr. Rawle, in his excellent work on Covenants (5 Ed.) 205, discusses the question, reviews the authorities, and concludes that the weight of authority is with the opinion of this Court. We noted the cases upon the subject in Eames v. Armstrong, 142 N.C. 506.
We are of the opinion that his Honor's ruling upon the admissibility of the evidence offered by plaintiff for the purpose of attacking the sheriff's deed was correct. This renders it unnecessary to discuss a number of the plaintiff's exceptions. The constitutionality of (10) our revenue and machinery acts is not presented.
The judgment must be affirmed.
No error.
Cited: Jones v. Schull, 153 N.C. 521, 522; Rexford v. Phillips,159 N.C. 221; Jackson v. Beard, 162 N.C. 116; Crowell v. Jones,167 N.C. 389; Townsend v. Drainage Comrs., 174 N.C. 560. *Page 8