## McCARTHY v. UNION PAC. RY. CO. ET AL.

(No. 2226; November 24, 1942; 131 Pac. (2d) 326)

310

For the appellant, there was a brief and an oral argument by *Harold M. Johnson* of Rawlins.

For the respondent, there was a brief and an oral argument by *John J. Hickey* of Rawlins.

*Harold M. Johnson* in reply.

BLUME, Justice.

This is an action brought by plaintiff Nellie McCarthy against Elizabeth C. Hayes and others to quiet title to the following property situated in Carbon County, Wyoming, namely:

All of Sections Nineteen (19) and Twenty-three (23) South of the Union Pacific Railroad and all of Sections Twenty-five (25), Twenty-seven (27), Twenty-nine (29), Thirty-one (31), Thirty-three (33), and Thirty-five (35) and twenty-four (24) acres in the South Half (S/2) of Section Twenty-one (21) all in Township Twenty-one (21), North of Range Eighty-Six (86),

West of the Sixth (6) Principal Meridian in the County of Carbon, State of Wyoming as platted and recorded in the office of the County Clerk and Ex-Officio Register of Deeds in and for the said County of Carbon,

containing about 4617 acres of land. The property was conveyed by the Union Pacific R. R. Company in 1920, subject to coal and mineral rights, to Mark F. Madden and Michael S. Madden, by deed duly recorded. In 1926 Mark S. Madden conveyed his interest therein to Michael S. Madden, by deed duly recorded. In the early part of 1933, Michael S. Madden conveyed the land to Elizabeth C. Hayes, the appellant herein, by deed duly recorded. Plaintiff claims under a tax title, on account of the non-payment of taxes for 1932. In that year the land was assessed in the name of "Madden Bros." for the sum of $5770. The taxes remaining unpaid, and notice having been published, the land was, on August 24, 1933, sold to Carbon County for $149.32, the amount of the taxes, penalty, interest and costs then due. No redemption having been made, the county treasurer of Carbon County, on April 12, 1937, sent notice addressed to "Madden Bros." at 140 So. Durham St., Chicago, Illinois, and to whom it may concern, that the time for redemption would expire on August 25, 1937, in default of which a tax deed would be issued to the county at that time. The envelope containing the notice was addressed to Elizabeth C. Hayes, the appellant herein, and receipt of the letter was acknowledged by "Elizabeth C. Hayes by M. S. Madden," on April 16, 1937. No redemption having been made, a tax deed was accordingly issued to the county, which in turn, in September, 1937, sold the land to one R. A. Hakala. Plaintiff claims through him. The defendant Elizabeth C. Hayes, owner under the deed from Michael S. Madden, claims that the tax title above mentioned is invalid for the reasons hereinafter mentioned, and in a cross-petition filed herein, she offered to pay the taxes due,

and asked that the title to the property be quieted in her. The court entered judgment for the plaintiff, quieting title in her. From that judgment Elizabeth C. Hayes has appealed. She will hereafter be mentioned by name or as appellant.

The parties, through their attorneys, stipulated the following facts:

1. Mark F. Madden and Michael S. Madden, residing in the city of Chicago, became the owners in fee of the above described premises by virtue of a warranty deed from the Union Pacific Railroad Company, dated April 7, 1920, and recorded in book 146 of the records of the county clerk of Carbon County, Wyoming. In said deed all coal and other minerals were reserved to the Union Pacific Railroad Company. 2. On October 27, 1926, Mark F. Madden conveyed his interest in the above real estate to Michael S. Madden by quit claim deed, duly registered in Carbon County on November 3, 1926, in Book 182, page 254. 3. On July 12, 1932, Michael S. Madden and his wife mortgaged the aforesaid lands to appellant, the mortgage being recorded on July 5, 1932 in book 206 p. 492, mortgage records of Carbon County. 4. Michael S. Madden conveyed all his right, title and interest in the foregoing land to appellant by quit claim deed, dated May 24, 1933, recorded June 5, 1933, in book 207, page 387, records of Carbon County. 5. Appellant on June 5, 1933, became the record owner in fee of said property, and has never conveyed it to anyone else. 6. Mark F. Madden, Michael S. Madden and appellant are all residents of Chicago, Illinois, and have never been residents of Wyoming, and have never occupied the foregoing lands. 7. Appellant is ready, willing and able to promptly pay all property taxes, taxation charges, penalties and interest against the foregoing lands at any time when the proper amount thereof has been ascertained. 8. The property was assessed in 1926 to 1932 both inclusive

in the name of Madden Bros., and these taxes, except for 1932, were paid by check of Madden Bros. There is no evidence that M. S. Madden raised any objection to this assessment or payment. 9. The certificate of the assessor to the assessment roll and tax list of 1932 is dated September 1, 1932, and was subscribed and sworn to on March 18, 1933.

In August, 1937, letters were interchanged between Madden Bros. and the county treasurer of Carbon County. The former asked for the amount necessary to redeem the land from tax sale. The information asked was given. On August 21, 1937, the sum of only $150.82 was remitted, Madden Bros. stating that they did not have the money to pay all the taxes due. The amount remitted being insufficient—and not including subsequent taxes—was returned by the county treasurer. The letters from Madden Bros. stated that the appellant was the owner of the land. In 1934 a lease of the land to the Savage Live Stock Company was entered into by the latter and the appellant, and the lease was continued orally from year to year, the Live Stock company still occupying the land in 1937 under this lease. Payments of the rental were apparently all made to M. S. Madden. The record contains a receipt for $350.00, for the rental of the land from June 1, 1936, to June 1, 1937, signed by "M. S. Madden, agent for E. C. Hayes."

■ It is contended on behalf of the appellant that the tax title herein is void because of the illegal assessment of the land in 1932 in the name of "Madden Bros.," when it should have been in the name of Michael S. Madden; because the assessment roll was not certified by the assessor until in the year 1933; because of insufficiency of notices given and because no notice was served on the occupant of the land as required by statute. We think it is not necessary to discuss any of the contentions except the first, namely, that the land was

illegally assessed in the name of Madden Bros. This court held in the case of Hecht v. Boughton, 2 Wyo. 385, that a tax title based on an assessment of real property not in the name of the true owner is void. In that case the assessment was made in the name of the husband, instead of his grantee, his wife. The court examined the various statutory provisions then in force. These provisions are substantially those still in force, and we need not examine them separately at this time. There are now additional statutory provisions. In 1907, the legislature, by section 7, chapter 80, of the Session Laws of that year (Sec. 30-306, Rev. St. 1931), provided as to the county assessor:

"He shall examine the county records as to transfers of realty and personal property from time to time, and gather from all reliable sources all possible information and knowledge of the changes of ownership of property, and shall make such record of transfers of property from time to time as will better enable him to assess all property to its rightful owner or owners, at the time of the making of the assessment roll for that year, and which will better enable him to arrive at the true value of such property."

By c. 70, Section 6, of the Session Laws of 1923, it was provided that "no property shall be sold for taxes except in the manner now provided by the laws of the State of Wyoming." Section 1, Chapter 53, Session Laws of 1933, provides that the notice of the sale of real estate for taxes shall "state the name of the record owner thereof and the name of the party in whose name they are assessed, if not the record owner thereof" (evidently referring to the record owner who may have become such since the assessment was made), and providing that the county treasurer violating this duty shall be guilty of a misdemeanor. These provisions, we think, have emphasized and strengthened the requirement mentioned in Hecht v. Boughton, supra, that property must be assessed in the name of the true

owner, if known. It would seem apparent that we are not justified in overruling the decision in that case. Moreover, that decision is in accord with the universal rule on the subject, in the absence of a statute to the contrary. Black on the Law of Tax Titles (2nd ed.) Sec. 105, states that "the statutes generally require that real property shall be listed and assessed to the owner, or to the owner or occupant; and it is generally admitted that this requirement is imperative, and a compliance with it is essential to jurisdiction." In 26 R. C. L. 358 it is said that "ordinarily a tax on real estate should be assessed to the person appearing of record to be the owner thereof, and a tax to a person who is not the record owner is void. An assessment of real estate to be valid, therefore, must state the owner's name correctly." In 61 C. J. 634 it is stated that "except in some jurisdictions, statutes requiring real property to be assessed in the name of the owner, or the owner or occupant, are mandatory, so that an assessment in the name of one who is not the owner, or the owner or occupant, when the true owner is known, or by the exercise of ordinary care, could be discovered, is invalid, unless the error is cured by statute * * * or there is such acquiescence as to create an estoppel." In 61 C. J. 1317 it is said that "no title to land is acquired by a tax sale based on an assessment which omits the name of the owner. So an assessment made in the name of one not the owner of the property, or to unknown owners when the true owner is known, or could be ascertained, being invalid, no power to sell the property so assessed exists, and a sale confers no title on the purchaser, unless the defect is cured by limitations, or unless the statute expressly provides that such defects shall not invalidate a tax sale." Cooley on Taxation (4th ed.) Section 1096 is in accord with these authorities, and in section 1039 of this work, the author states that "ordinarily a failure to comply with statu-

tory requirements is not a mere irregularity but is a fatal omission." Klupke v. Baker, 68 Cal. 559, 10 Pac. 197, and Smith v. Read, 51 Conn. 10, hold, like Hecht v. Boughton, supra, that an assessment in the name of the husband, instead of in the name of the wife, if she is the owner, is invalid. For a late case on the subject see Tintic Undine Mining Company v. Ercanbrack, 93 Utah 561, 74 P. (2d) 1184. Some of the states have statutes providing that assessments not in the name of the owner shall not invalidate it. We can readily see that in states where every acre is cultivated, and land is assessed, commencing with section 1 and ending with section 36 in each township, or in states where a similar method of assessment prevails, such a statute would probably work no injustice. But in this state much of the land is public land and is vacant, and such method is not so readily adaptable. Hence our statute provides (Sec. 36-306, Rev. St. 1931), that the assessor shall enter into his book "the names of persons, corporations and companies in alphabetical order as far as possible in the assessment roll of the county." Under this system the name of the owner is important, so that all persons interested in the property at the time of the assessment or thereafter may have proper information. In the case at bar Michael S. Madden was the record owner of the land at the time of the assessment here in question. That name is not in any way similar to "Madden Bros." in whose name the assessment was made. There was not merely a mistake in the name. In fact, so far as the record shows, Madden Bros.—whatever that term stands for—was, or were, never the owner of the property. The term "owner," so far as real estate is concerned, means owner of record. Cooley, supra, Sec. 1097; 26 R. C. L. 358; In Re Sheehy, 119 La. 608, 114 So. 315. That must be so, in order that the state, the county, and all parties who are at the time of the assessment or thereafter interested in the prop-

erty, may be fully protected. That is evidently what the legislature had in mind when it required the assessor to examine the records. The assessment here in question, accordingly, and the tax deed issued pursuant thereto, must be held to be void, and the appellant entitled to redeem, unless she is barred by reason of the facts hereinafter discussed.

■ On behalf of the plaintiff it is argued that the assessment of the land in question from 1926 to 1932 was made in the name of Madden Bros. (presumably a partnership) ; that Michael S. Madden was a member of Madden Bros.; that the taxes on the land for these years, except 1932, were paid by Madden Bros., and that Michael S. Madden, accordingly, must be held to be estopped by acquiescence from questioning the validity of the assessment. The conclusion apparently drawn is that the appellant, too, is estopped. A few cases seem to give recognition to such doctrine of estoppel by acquiescence in similar circumstances. Le Blanc v. Babin, 197 La. 825, 2 So. (2d) 225 ; P. M. Guffy Petroleum Co. v. Murrell, 127 La. 466, 53 So. 705; Byrne v. Town of Chatham, 44 New Brunswick 271. It does not appear in these cases whether or not it was the duty of the assessor to examine the records. In Benton v. Merrill, 68 N. H. 369, 39 Atl. 257, which gives recognition to the doctrine, it appears that plaintiff, the owner, continued to pay the taxes assessed in the name of another, and it was held that this justified the continuance of the assessment in the same manner. The court, however, also held that the assessor "was entitled to have knowledge of the ownership derived from evidence such as would satisfy persons in general in the like situation; and it was not his duty to examine the registry for the purpose of obtaining such knowledge." If, as held by some of the authorities, the assessment in the name of the owner is jurisdictional, there may be some question whether or not the rule of

estoppel by acquiescence could apply. And that may be true, too, when the statute makes it the duty of the assessor to examine the records, for he could not well be misled if he performs his duty. Oakham v. Hall, 112 Mass. 535. In Marysville Inv. Co. v. Halle, 58 Kans. 773, 51 Pac. 281, the court stated that "it is extremely doubtful whether under our statutes a case could possibly arise where the holder of the patent title would be estopped by mere silence or non-action to assert his title as a purchaser under a tax deed." In Horsky v. McKennan, 53 Mont. 50, 162 Pac. 376, 380, the owner was present when his property was sold. It was sold in bulk in violation of a statute. He not having objected to the manner of sale, it was claimed that he was estopped. The court, holding against this contention, said: "Tax titles are not derived from the fee; there is no privity between the holder of the one and the holder of the other; neither owes a duty to the other, nor is estopped because of his situation, from making any claim against the other. Hussman v. Durham, 165 U. S. 144, 147, 17 Sup. Ct. 253, 41 L. Ed. 664; Crum v. Cotting, 21 Iowa 411." See also 31 C. J. S. 397. It is said in 19 Am. Jur. 634 that an estoppel arises by words or conduct which had induced another who was ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby to his injury. In 19 Am. Jur. 643 it is held that, in order that an estoppel may operate in favor of anyone, he must have lacked knowledge and the means of knowledge of the truth as to the facts in question. In 19 Am. Jur. 742, it is said that "ordinarily the courts refuse to give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them. A distinction is sometimes made as to the duty of exercising diligence to learn the truth between cases where the claim of estoppel is based on

mere silence or inaction and those where it is based on affirmative representation or conduct, the view being taken that the availability of a means of knowing the true state of facts, as by reference to the public records, bars a claim of estoppel in cases of the former class, but not in the case of the latter class." In 31 C. J. S. 270 it is stated that "where the real facts were known to a person or were open for his convenient ascertainment, he was not justified in relying on representations pertaining thereto * * * Hence as a corollary to the proposition that the party setting up an estoppel must have acted in reliance on the conduct or representations of the party sought to be estopped, the former * * * must not only have been destitute of knowledge of the real facts as to the matter in controversy, but must have also been without convenient or ready means of acquiring such knowledge. One relying on an estoppel must have exercised such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case require." If the rules so announced were to be held applicable to the case at bar, it is apparent that the assessor, whose duty it was to examine the records, could not rely upon any estoppel, and the purchaser of the tax title would be in no better position since he derives his title through the initial acts of the former, and if one of the legal steps leading up to the tax title fails, they all fail. Tintic Undine Mining Co. v. Ercanbrack, 93 Utah 561, 74 P. (2d) 1184, 1187.

We need not, we think, decide the point here discussed. It may not be free from doubt, and it is better to leave it for further consideration in the future. We may, for the purposes of this case, assume that the doctrine of estoppel by acquiescence is applicable in connection with assessments for taxation. But does it follow that because Michael S. Madden would be estopped from questioning the erroneous assessment herein, his grantee, too, would be estopped? We have

found no case which has so held. Appellant doubtless would also be estopped, if the statutory requirement that the assessment must be made in the name of the owner were only for the benefit of the party who is the owner of the property at the time of the assessment. But that is not the law. Rights and duties are reciprocal. If the state or county can enforce its assessment against parties who receive an interest in the property subsequently, the latter should be able to invoke the rule as to the duties of the agents of the former. And that has been held frequently. Jenkins v. Kirby, 90 W. Va. 436, 11 S. E. 307; Long Realty Co. v. Bank, 177 Ga. 440; McDaniel v. Thomas, 162 Ga. 592, 133 S. E. 624; National Fire Proof Corp. v. Hagler, 226 Ala. 104, 145 So. 421; Weideman v. Town of Pocahontas, 225 Iowa 141, 279 N. W. 146; Munson v. Marks, 52 Colo. 553, 124 Pac. 187; 61 C. J. 1437. In Black, supra, section 430, the author states that "it may be regarded as settled that the right to bring suit for the purpose of setting aside a tax sale and having the deed declared void is not confined to the original owner of the land, but may be exercised by his mortgagees or other creditors, and we presume by any person who can show such an interest in the estate as would have entitled him to redeem." This statement is recognized as the law in Miller v. Cook, 135 Ill. 190, 25 N. E. 756. Cooley, supra, Sec. 1506, while recognizing that persons having title to property and mortgagees may contest a tax title, also states that "as a general rule only one having a title to or interest in the land *at the time of the sale* can attack a tax title." This statement, standing by itself, might be misleading. It seems that the person attacking such title must be able to show that he or his predecessor in interest, by grant, had an interest in the land. Dyer v. Marriott, 89 Kans. 515, 131 Pac. 1185; Eames v. Armstrong, 146 N. C. 1, 59 S. E. 165; Osceola Land Co. v. Mill & Lumber Co., 84 Ark. 1, 103 S. W.

609. But that is as far as the limitation appears to extend. Even that seems to have its exceptions, as in the case of one who claims title by adverse possession. McQuity v. Doudna, 101 Iowa 144, 70 N. W. 99. In any event, appellant in this case had title to the land at the time of the tax sale herein.

In this connection counsel for plaintiff argues that the evidence herein, including the correspondence with the county treasurer in 1937, above mentioned, indicates that not the appellant, but Madden Bros. are the real party in interest. Of course, if appellant has no interest in the land, she has no standing in court. But we do not think that the record justifies counsel's contention. In the first place, that is contrary to the stipulation herein which concedes that the appellant became the record owner of the property. Again, a mortgage was given to her by Michael S. Madden in 1932. We find nothing in the record why this should have been done at that time, for the purpose, as counsel contends, of "creating technicalities which would divest an innocent third party of the title received by her." 1932 was a year of financial and economic difficulties, and mortgaging land to alleviate them does not seem surprising. The next year a deed was given to appellant. Whether that was done to pay the mortgage, or whether it was given merely as additional security does not appear, and would seem to be immaterial, under the rule heretofore stated. Appellant, accordingly, had, so far as the record shows, the right to contest the validity of the tax title.

The record is devoid of evidence of appellant's acquiescence in the defective assessment herein involved, and she could not, accordingly, be held to be estopped herein, unless it be by the mere fact that, Michael S. Madden being estopped, she, as his grantee, is also. In 19 Am. Jur. 815, it is stated that "grantee is in privity with his grantor to the extent that he is bound by an

estoppel in pais against the grantor if he had notice of the facts from which the estoppel arose at the time of the grant, but according to the general rule a bona fide purchaser for value and without notice of an estoppel against his grantor is not bound by the estoppel." See also 10 R. C. L. 839. In 31 C. J. S. 401, it is said that "as a general rule a grantee will not be estopped by any act, conduct or declaration of his grantor of which he has no notice." It has been held in some of the cases that when an assessment for special improvement has been made, failure of the person against whom the special assessment has been made, with knowledge of the fact that money is expended in reliance on the assessment, to make objections will estop him, and it may be that in such case his grantee with knowledge of the facts would also be estopped also. See Cooley, supra, 1613. If a grantor actively participates in making an assessment, and he is estopped for that reason in questioning the assessment, then, according to People v. County Treasurer, 239 Ill. 611, 88 N. E. 212, his grantee is also estopped. In Campbell v. McGrath, 117 Okl. 126, 245 Pac. 634, it appears that the grantor accepted the surplus arising from the sale of property for taxes. He was held to be estopped under the rule that one who accepts the proceeds of a sale of his property, with full knowledge of the facts, is estopped to assert title as against the purchaser. And the grantee, with full knowledge of the facts, was held estopped. The books seem to be devoid of cases which have passed on the question whether mere silence and acquiescence of a grantor under circumstances such as before us, estops a grantee from contesting an assessment. Nor is it necessary, we think, for us to pass upon it, and we may, for the purpose of this case, assume that if Michael S. Madden was estopped to question the assessment in question, and if the appellant had notice of the facts giving rise thereto, and if she was not a pur-

chaser for value, she, too, would be estopped. The question then arises as to who has the burden of proof. It is held that one of the uncontroverted principles established by the authorities with unanimity is that the burden of proof rests on the party setting up an estoppel to show the grounds on which it rests. 19 Am. Jur. 852; 10 R. C. L. 845; 31 C. J. S. 454. In Re Evans, 42 Utah 282, 130 Pac. 217, 225, the court stated that "estoppels are odious and every presumption is against them until the right to apply them affirmatively appears with certainty by the right record." To the same effect is Du Coty v. Land Co., 100 Conn. 255, 123 Atl. 265; Crosthwaite v. Lebus, 146 Ala. 525, 41 So. 853. In School Board v. Patterson, 111 Va. 482, 487, in which a tax title was held invalid, the court stated that "no attorney or purchaser of land, in making examination of titles, could reasonably be expected to look into the delinquent tax records for 1894 to ascertain whether in that year land had been returned delinquent in the name of the grantor whose deed of conveyance for the land had been recorded two or more years prior thereto. A purchaser of land would be justified in presuming that the officer of the state had discharged the duty required of him, of having made the proper transfer on the land books, and that, therefore, after the year in which the deed was recorded the land would, if delinquent, be returned delinquent in the name of the grantee in such deed." In Chase v. Cochran, 102 Me. 431, 436, an equitable estoppel was claimed against a grantor as well as a grantee by reason of statements made by the former. The court stated that "without discussing or deciding the adequacy of this statement to create an estoppel against the grantors, it is sufficient that there is no evidence that plaintiff ever heard of this statement before purchasing. The plaintiff cannot be estopped by any act, conduct or declaration of his grantors of which he had no notice." It is clear

that here the court considered the burden of proof to be upon the party who asserted an estoppel against the grantee. If, perchance, upon further consideration, it should be found that the burden of proof is otherwise than stated by these authorities, it would not help in the case before us. No estoppel was pleaded, and it is stated in 19 Am. Jur. 844, that an estoppel in pais must be strictly pleaded with precision and certainty. To the same effect is 31 C. J. S. 449. There is, accordingly, nothing in the record which would have put appellant upon notice that an estoppel against her was claimed. We think it would hardly be fair to hold that she was put upon such notice merely because an estoppel could, under the agreed statement of facts, be inferred against her grantor. We cannot, accordingly, hold, upon the record before us, that appellant was estopped from attacking the validity of the assessment here in question.

Counsel for plaintiff argues that the appellant had, for several years, knowledge of the delinquency of the tax and the sale of the land on account thereof, and consequently should not, in equity, be entitled to any relief herein. It is true that her conduct and that of her agent can hardly be said to have been commendable, unless, perchance, financial conditions offer the proper excuse. But we have not found any authority which would on that account excuse the violation of the statutory duty of the assessor in assessing the property to the owner. "Mere inaction," it is said, "on the part of the land owner with knowledge that his land has been sold for non-payment of taxes does not, however, estop him from contesting the validity of the sale. * * * The doctrine of laches has no application when the plaintiff (the appellant here) is seeking to enforce a legal title, and he can be barred only by the statute of limitations." 26 R. C. L. 447; 61 C. J. 1413, 1435-36; Marysville Inv.

Co. v. Halle, 58 Kans. 773, 51 Pac. 281. In Blackwell on Tax Titles (4th ed.) 513, the author states:

"It may be laid down as a general rule of law, that where an irregularity—of such a character as to affect the power to sell—takes place in any part of the proceeding, and the owner of the land, being aware of the fact, is silent, and takes no steps to prevent the sale, but permits it to proceed, or even eventually consents to waive the irregularity, a sale, under such circumstances, will not be recognized in a court of law. The officer derives his authority from the law, and not from the owner. He must obey the law, and not the orders of a private individual. When he keeps within the pale of his authority, minor irregularities may be cured or waived by the party in interest, without impairing the official character and validity of the proceedings; but the authority itself or any substantial link in the series of acts which are necessary to establish the existence of the power, cannot be supplied or enlarged, so as to give official character and validity to acts not authorized by the plain provisions of the statute."

And the reasons for this conclusion are well stated in Tintic Undine Mining Co. v. Ercanbrack, supra, where the court said:

"It is elemental and settled beyond argument in this jurisdiction, that tax sale proceedings and statutes are strictissimi juris. The sales are made exclusively under statutory authority. The seller is making a sale not coupled with an interest, and derives his authority solely from the statute, and it is derived from no rule or principle of the common law. He can have no authority to sell except as he is made the agent of the law for that purpose, and if the steps necessary to precede his action fail, he is not invested with legal right to make the sale; if one step fails, they all fail. The rule, therefore, is that all the preliminary requirements of the statute, made conditions to the exercise of the right and power to sell, and designating the various proceedings which culminate the sale, must have been strictly complied with. The officers who execute this power

should follow the steps outlined for its exercise with precision. It is a special jurisdiction and must be strictly pursued."

That appears to be the general rule. 61 C. J. 1117. The judgment of the trial court must, accordingly, be reversed, and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

*Reversed and Remanded.*

RINER, Ch. J., and KIMBALL, J., concur.