TRAILS MOTOR, Incorporated, doing business as PLAINS AUTO BODY SHOP,

*Plaintiff and Respondent*

vs.

THE FIRST NATIONAL BANK OF LARAMIE and GENERAL CREDIT COPORATION,

*Defendants and Appellant.*

(No. 2724; September 18, 1956; 301 Pac. (2d) 775)

154

156

Heard before Blume, Chief Justice, Harnsberger, Justice and McAvoy, District Judge.

For the defendants and appellants, the cause was submitted upon the brief of J. R. Sullivan and G. R. McConnell of Laramie, Wyoming, and oral argument by Mr. McConnell.

For the plaintiff and respondent, the cause was submitted upon the brief of Bernard E. Cole, Thomas J. Carroll and A. Joseph Williams of Cheyenne, Wyoming, and oral argument by Mr. Carroll and Mr. Williams.

158

## OPINION

McAvoy, District Judge.

By the direct appeal method, the appellants challenge a judgment rendered against them. Trial was to the court, a jury having been waived. On June 4, 1955, the trial court, stating its findings generally for the plaintiff and against the defendants, adjudged that plaintiff have judgment against defendants for the sum of $2,256.78, with costs. Noting their exceptions, appellants have lodged appeal in this court.

In this opinion, First National Bank of Laramie will be referred to as the bank, General Credit Corporation as the credit company, and Plains Auto Body Shop as the body shop; except occasionally for clarity, we shall use their accurate names. We shall also refer to the parties as they were aligned in the court below.

Defendants jointly assigned and duly filed specifications of error asserting as grounds therefore that:

1. The judgment is contrary to law.

2. The judgment is contrary to the evidence.

3. The trial court erred in failing to consider the motion of defendants filed in said cause, asking that "they be permitted to amend their petition to plead estoppel * * * for the reason that said failure to consider said motion by the court is contrary to law."

Preliminary to a recitation of the pleadings of the parties to this suit, some materials of our code of civil procedure warrant attention. Issues are defined and classified by our civil code, § 3-2102 W.C.S. 1945, as follows:

"Issues arise on the pleading where a fact, or a conclusion of law, is maintained by one party and controverted by the other. They are of two kinds:

"1. Of law;

"2. Of fact."

The plaintiff's amended petition averred (1) the corporate entity of the plaintiff; (2) its ownership and operation of Plains Auto Body Shop in Cheyenne; (3) corporate entity of the bank, its domestication and authority to transact business in Wyoming; (4) the corporate entity of General Credit Corporation under Colorado law and domestication in Wyoming.

Allegation numbered five of the petition alleged that the credit company "accepted, endorsed and cashed checks" payable, "individually or jointly" to "Plains Auto Body Shop" following their endorsement by one Wes Curl; that such checks were then cashed by the defendant bank.

In the next and final paragraph the plaintiff incorporates, as a part of its petition, photostatic copies of five drafts. Two are payable to "Plains Auto Body" in the amounts of $276.39 and $448.76, respectively; one payable to "Plains Auto Body Company" in the amount of $368.75; two payable to "Plains Auto Body Shop" in the amounts of $397.97 and $764.91, respectively. Each of the drafts is endorsed by pen, in ink and in longhand, in words substantially as follows:

"Plain Auto Body
By Wes Curl."

The further endorsement appears on each of the drafts

"For Deposit Only
First National Bank
General Credit Corporation."

All drafts were drawn and paid in the year 1949; three are dated in April, one in June, and one in July of that year.

Recurring to the subject averment, plaintiff in substance alleges that: (a) In 1949 plaintiff had Wes

Curl in its employ; (b) Curl was in no way serving as agent of plaintiff and had no authority to "cash, endorse, discount, negotiate or in any other manner transact the financial affairs of the plaintiff, all to the knowledge of the several defendants"; (c) Curl "endorsed and cashed checks, payable to plaintiff, with the defendants who accepted the said checks and made payments thereon upon the said endorsements"; (d) Curl converted moneys to his own use without the knowledge or permission of the plaintiff. Plaintiff prayed for judgment in the amount $2,256.78. Separate answers, each containing separate defenses, were duly and respectively filed by the defendants.

The salient features of these answers call for brief mention. The credit company admitted the whole of allegation number five of the petition, except the cashing of the drafts by the bank which it denied. The credit company admitted that (a) "Wes Curl endorsed and cashed checks payable to the plaintiff, with the defendants who accepted said checks and made payments thereon upon said endorsements"; (b) "copies of said checks upon which payment was made are attached and made as exhibits to plaintiff's amended petition." It consequently denied the following allegations:

1. That during the year 1949, the plaintiff had in its employ said Wes Curl.

2. The said Wes Curl was in no way serving as the agent of the plaintiff, and had no authority whatsoever to cash, endorse, discount, negotiate or in any other manner transact the financial affairs of the plaintiff, all to the knowledge of the several defendants and each of them, individually.

3. That said Wes Curl converted the said moneys to his own use without the knowledge or permission of plaintiff.

The credit corporation by way of separate defense denied that the plaintiff had been in any manner either damaged in the sum of $2,256.78 or any other sum and averred that plaintiff received full payment, satisfaction and discharge of said debt.

The bank, after admitting all allegations of paragraph numbered five of the petition, especially alleging the passing of credit to the endorser, the credit company, upon its account with the bank, and the corporate entity of plaintiff and the bank, denies the plaintiff's ownership and operation of the body shop, the incorporation of the credit company. It denies each allegation of material fact in such paragraph and interposes two separate defenses.

The first defense that (a) plaintiff was obligee, Curl was principal and Maryland Casualty Company of Baltimore, Maryland, was obligor under a certain numbered fidelity bond numbered and dated November 17, 1948, (b) plaintiff has received $2,500 from the obligor for the loss by the obligee by reason of Curl's conduct, (c) in virtue of which plaintiff has been paid to the full extent of the damages alleged to have been sustained.

The second defense that (a) plaintiff assigned to the named obligor "any and all right, title and interest in and to any claim or claims the plaintiff may have arising out of the alleged conduct of Wes Curl," (b) by reason of the assignment the plaintiff is not the real party in interest. Replies of general denial were made respectively to these separate answers and separate defenses.

The plaintiff grounded its suit on the theory of its ownership and operation of the body shop and Wes Curl's lack of authority to engage in the financial affairs of the plaintiff. The credit company denied

that Wes Curl was plaintiff's employee or that he was, as the plaintiff alleged, "in no way serving as the agent of the plaintiff and had no authority to cash, endorse, discount, negotiate or transact the financial affairs of the plaintiff." The bank denied the employment and agency of Wes Curl by the plaintiff or that he had no authority to cash checks or transact the financial affairs of the plaintiff and denied his conversion of the moneys through the cashing of the drafts. Before coming to close quarters with the case, we venture upon a few other salient facts.

At the outset of the trial, April 22, 1955, a stipulation was executed by the parties to the action which, omitting the title and the parties signatory, is as follows:

"The parties hereto acting by and through their respective attorneys, agree as follows:

"1. That Exhibits 'A', 'B', 'C', 'D', and 'E' attached to the Amended Petition are true copies of five checks payable to either 'Plains Auto Body', or 'Plains Auto Body Shop', or 'Plains Auto Body Company'; that each of said checks was endorsed 'Plains Auto Body, by Wes Curl'; that said Wes Curl presented said checks to defendant General Credit Corporation; that said General Credit Corporation paid to said Wes Curl the amounts of money designated on the face of each of said checks and deposited said checks to the account of the corporation in defendant First National Bank, of Laramie, Wyoming; and that said defendant bank credited the account of the defendant General Credit Corporation in the amount shown on the face of each of said checks, placed each of said checks in line for payment, and collected either directly or indirectly from the depository banks named on said checks the amount of money shown on the face of each of said checks.

"2. That said Wes Curl was employed by the plaintiff; that nothing contained herein is intended by the parties to be indicative of the scope of employment of said

Wes Curl by the plaintiff; and that the defendants on the trial of the matter herein shall have the full benefit of their denials and allegations concerning the employment of said Wes Curl by the plaintiff as those denials and allegations are set forth in the answers filed herein.

"3. That said exhibits may be received into evidence on trial of said matter as true copies of said checks for such probative value as they may be to the Court."

The trial was concluded April 22, 1955, and, as mentioned before, the court rendered judgment on June 4, 1955. On May 9, 1955, defendants filed their joint motion in material part as follows:

"Comes now the above named defendants, the First National Bank of Laramie, Wyoming and General Credit Corporation, and most respectfully move the Court for its Order to permit the defendants to plead estoppel as a further defense to the matters and things set forth in the plaintiff's petition."

The record is silent as to what action was taken concerning the motion. We conclude that the motion was not impacted by any official, judicial function. Though explanations are made in the briefs, nevertheless, they are not conclusive and, under our rules repeatedly asserted, are no part of the record.

The record implies the following factual statement: Plaintiff owned a Dodge-Plymouth automobile agency under the corporate name of Trails Motors, Incorporated, and operated a body repair business under the name of Plains Auto Body Shop at a separate location in Cheyenne. The body shop repaired wrecked automobiles for various insurance companies. When the repairs were made, these companies drew drafts or checks in payment of the labor performed and materials furnished in the repairs. All checks were payable to Plains Auto Body Shop, Plains Auto Body or Plains Auto Body Company. Managing this shop was a man

named Wes Curl; he acted as shop foreman and supervised the work and labor of the helpers under him. He owned a wrecker-truck painted white upon which appeared "Plains Auto Body Shop" in black letters. Curl purchased this wrecker from Tyrell Motors at Cheyenne and financed it through the credit company. The plaintiff executed a so-called repurchase agreement conditioned upon the default of Curl in payment thereof.

Plaintiff had a working arrangement with Curl whereby plaintiff allowed him 65% commission on the labor processed in the body shop, advanced and paid the other body shop workers, who worked with Curl, their wages and charged the latter against Curl's commission. Plaintiff gave orders to Curl on what to do, such as estimates of repairs and appraisals of wrecked automobiles. Plaintiff withheld Curl's current income and withholding taxes and reported him in its reports to official regulatory bodies as an employee.

Payments made to the body shop in the form of checks or drafts were mailed to the body shop and later picked up or delivered to the plaintiff at its automobile agency in another part of the city. All receipts were deposited in the corporate name of the plaintiff. No deposits were made in the name of the body shop; it had no separate account anywhere.

Curl surreptitiously extracted the drafts made the subjects of this action and cashed them at the Laramie, Wyoming, branch office of the credit company which, in turn, deposited and received credit for them in the First National Bank of Laramie.

The trial court can only decide the particular dispute before it; it must decide the particular dispute according to a rule or principle which covers a whole class of like disputes. The things that are said and done

regarding the operative facts from which a legal consequence follows in the form of official conduct called a judgment must be absorbed and understood with primary reference to the particular dispute.

There are rules that govern this court. The trial court's findings upon conflicting testimony will not be disturbed when there is substantial evidence tending to support the judgment. Another equally well-established rule is where there are assignments of error that the judgment of the trial court is "not sustained by sufficient evidence or is contrary to the evidence" and "is contrary to the law" we as an appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. Dulaney v. Jensen, 63 Wyo. 313, 181 P.2d 605; Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 177 P.2d 204, 169 A.L.R. 502; Hawkey v. Williams, 73 Wyo. 463, 281 P.2d 447; Lucksinger v. Salisbury, 72 Wyo. 164, 182, 262 P.2d 396, where Justice Harnsberger cites many cases.

Charles L. Peters when asked under cross-examination whether he did not feel that he should tell persons that Plains Auto Body shop was owned by Trails Motors, Incorporated, replied:

"A. We made no effort to keep—we didn't cover up the fact that Trails Motors operated the business, and when the question was brought up—I could think of many, many times when we stated that Plains Auto Body was a part of Trails Motors, Incorporated. It would not do me well to tell somebody something that wasn't true."

This witness further answered:

"A. We did not cover up the fact that it was a part of the corporation; there was no reason for that."

Mr. Peters testified with respect to the knowledge of Larry O. Tilker, manager of General Credit Corporation's branch office at Cheyenne, of the maintenance by the plaintiff of the body shop under the name Plains Auto Body Shop as follows: ·

"Q. Do you know of your own knowledge whether or not Mr. Tilker knew at that time that you maintained such a body shop under that name?

A. Very definitely he knew it.

"Q. Did this matter ever arise in those conversations that you have testified to?

A. Yes, because Mr. Tilker was very well aware of all our operations because we were doing our entire transaction of business through him in regard to financing and, naturally, there was nothing that we did not discuss with him, and would have been very unwise to because we were negotiating loans at that time through his company, so we made everything very clear to him of what we were doing."

The trial court observed the witnesses, their conduct and demeanor while they testified, their apparent fairness or unfairness, and their abilities to form correct impressions of what they saw and heard and to relate them accurately. The trial court is in a better position to judge the truth and the merits of a case than we are, for we encounter the cold print and are hence denied the engaging aspects of human testimony. We have no difficulty in ascribing to all of the witnesses upright motives and candor in the course of the trial. Mr. Tilker admitted that he knew there was some working arrangement between Curl and the plaintiff.

He stated:

"In other words, they were the banker with the motive of making profit, just like Mr. Curl was making the business. Where they drew the line, I do not know."

Exhibit 8 of defendants, being a finance repossession report made out by the branch office at Cheyenne for the Omaha office of the credit company, relating to the repossession of the wrecker truck, assigns as the reason for repossessing the truck that the collateral had been abandoned, and on this form appears the signature of the branch manager, L. O. Tilker. There is a space on it where an explanation is to be made of the abandonment. This explanation, referring to Wes Curl, reads:

"This fellow has skipped out and completely abandoned this collateral at the body shop where he was employed on a commission basis which is part of the structure of Trails Motors."

The defendants emphasize the fact that Peters, president of the plaintiff corporation, in defendant's exhibit No. 2, being a reschedule agreement, had signed and approved the agreement and thereby bound himself to what was in the agreement. They refer to a question asking the present occupation of Wes Curl which, in typewriting, is answered assumedly as "owner." Occupation has reference to the principal or regular business of a man's life, or that to which he devotes his time and attention, such as trade, profession, or other vocation or calling, or that which principally takes up one's time, thought, and energy, especially one's regular business or employment, or whatever one follows as a means of making a livelihood; the principal or usual business in which a man engages. 29 Words and Phrases, Permanent Edition, 163.

We are unable to perceive that this exhibit, taken in connection with the surrounding circumstances under which it was executed, holds out to the public that Wes Curl was the owner of the body shop. Such conclusion does not follow.

Walter F. Seiler, assistant manager of the branch office of the credit company at Cheyenne, speaking of the matter of extension of credit to Wes Curl when the wrecker truck was financed by his company, among other things, stated that he never talked to Mr. Spratt or Mr. Peters as to the ownership of the body shop and asserted that he was under the impression that Mr. Curl owned the Plains Auto Body Shop. When Curl told him that, he thought Curl was telling the truth and never doubted his statement. At the very least, the situation in this case warrants, on the part of the credit company, an investigation of Curl different in character than the record would disclose before it can be heard to say that representations were made to it of the truth of things upon which it acted to its damage and injury. Unfortunately, the credit company was misled in its confidence in Curl. Many of humankind ,trusting others with whom they transact business and in the important commercial and business affairs of life, are misled by inaccurate, untruthful and even deceitful statements. Trust of others, while commendable, should not be sanctioned to excuse the failure to make investigation. Automobile financing institutions make investigations. Investigation is a primary part of their business. Any upright applicant for credit invites and expects investigation of himself and his representations. It is inscrutable that sources impacted in other investigations which doubtlessly the credit company made in the regular course of the conduct of its business were overlooked and disregarded. If they were deceived, the deception came from Curl.

The writer has thoroughly examined and carefully considered the record of the testimony and evidence in this case and is unable to find therein any express representations made by the plaintiff through its cor-

porate officers upon which the credit company could and did rely. Moreover, there is nothing in the record upon which to ground deception on the part of the plaintiff. Whatever conflict there may be in the record has been resolved by the trial court in its judgment, and it is to be observed that the defendants come here with a general finding against them.

With respect to whether or not the judgment is contrary to law the defendants, in their brief stating the legal question involved, say this:

"Are the defendants entitled to amend their answer to plead estoppel to facts arising from the evidence in this case?"

The theory upon which the plaintiff proceeded in the case was that of employment of Wes Curl, and the theory upon which the defendants proceeded in their case was that of ownership by Curl of the body shop. It irrefutably appears from the the record, not only by the testimony but practically by the stipulation, that Wes Curl forged endorsement on these drafts, obtained the money and skipped out of the country.

Our negotiable instruments law is clear. § 40-123, W.C.S. 1945, provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

In an annotation appearing in 31 A.L.R. 1068, dealing with the right of an owner of a check against one who cashes it on a forged or unauthorized endorse-

ment and procures its payment by the drawee, the majority rule is announced thusly:

"According to the general rule, a bank or other corporation, or an individual, who has obtained possession of a check upon an unauthorized or forged endorsement of the payee's signature, and who collects the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the check was obtained."

Seventeen jurisdictions are cited in support of that proposition of law. Neither of the parties in their brief discuss the proposition of law, and the defendants make mere mention of it without any argument. A later annotation upon the same subject appears in 67 A.L.R. 1535.

We note the case of House-Evans Company v. Mattoon Transfer & Storage Co., Okl., 275 P.2d 268. The plaintiff repaired a wrecked automobile at the instance of one Grayson. An insurance company issued a draft for $283.23, payable to Grayson, a named bank, and the plaintiff. In substance, the draft recited that the amount thereof was tendered in payment for loss and damages. The draft, which then purported to bear the endorsement of plaintiff, among other named payees, was tendered to the defendant Mattoon Company. Unknown to the plaintiff-payee, its name had been endorsed by forgery on the back of the draft. Graysons were indebted to Mattoon Company for storage of household goods in the amount of $65.13. Mattoon Company received the draft and paid Grayson $218.12. Subsequently, the draft bearing the stamped endorsement of Mattoon Company and a Tulsa bank was paid through the drawee bank and credited to the account of Mattoon Company, in the Tulsa bank. Thereafter, plaintiff learned of the transaction

whereby Mattoon Company received the draft, collected the proceeds and, months later, filed suit against Mattoon Company and the Tulsa bank. Judgment went for plaintiff against Mattoon Company for the sum of $65.13 only. Plaintiff appealed, contending that the judgment as rendered under the evidence should have been against Mattoon Company and the Tulsa bank for the full amount of $283.23. Holding that Mattoon Company and the Tulsa bank obtained possession and collected the amount of the draft from the drawee upon an unauthorized or forged endorsement of the payee-plaintiff's signature, and plaintiff being the owner of the draft, they were liable to the plaintiff to the extent of plaintiff's interest in it, the court reversed the judgment.

The theory underlying the principle applied in the cited case is that the possession of the check on the forged or unauthorized endorsement is wrongful, and moneys collected upon a forged endorsement are likewise unlawfully held. See 7 Am.Jur. § 597, p. 432; Beutel's Brannan Negotiable Instrument Law, 7th Ed., pp. 450 to 454.

We think that the evidence is overwhelmingly sufficient to sustain the judgment. We hold the judgment is not contrary to law.

In defendant's brief, defendants cite several Wyoming cases: Lellman v. Mills, 15 Wyo. 149, 87 P. 985; McCarthy v. Union Pacific Railroad Co., 58 Wyo. 308, 131 P.2d 326; Neiderjohn v. Thompson, 38 Wyo. 28, 264 P. 699; King v. Giblin, 36 Wyo. 448, 256 P. 1035. These cases were carefully examined. We have read them but fail to see how they assist the defendants. They concern amendments of pleadings, either to conform the pleadings to the proofs made or in furtherance of justice. Our consultation of the cases to discern the

application of the principles therein enunciated satisfies us that the principles were well applied and, we think, have no application to the present case. They are distinguishable wholly upon their facts.

The theory of estoppel is urged upon this court by defendants who seemingly contend that the plaintiff represented Wes Curl as having authority to handle the financial affairs of the body shop, including the endorsements of checks. The defendants proceeded, through the whole case, on the theory of ownership of the body shop by Wes Curl and at the conclusion of the trial and before judgment was rendered made the motion to plead estoppel, heretofore narrated. Upon what basis or theory this request was made we are bound to speculate. We cannot, in the discursive and expository language of an opinion, insert in the motion reasons or theories of our own. That is not our duty; that is the duty of the defendants. We do not know whether the estoppel was sought to be pleaded in the furtherance of justice or in conformity to the facts proved. On either score ,the evidence in the case developing its operative facts warrant, the conclusion on our part that justice did not go astray in t he court below. A careful analysis of the record and the transcript, in our judgment, confutes the application of estoppel in any of its various known aspects.

The necessity of pleading estoppel is set forth in 19 Am.Jur. 832, et. seq., and 31 C.J.S. § 153, p. 440, et seq. McCarthy v. Union Pacific Railroad Co., 58 Wyo. 308, 328, 131 P.2d 326, 332, states:

"No estoppel was pleaded, and it is stated in 19 Am.Jur. 844, that an estoppel in pais must be strictly pleaded with precision and certainty."

On the question before us, § 3-1704 W.C.S. 1945, reads as follows:

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations materials to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved; and when an action or proceeding fails to conform to the provisions of this act, the court may permit the same to be made conformable thereto, by amendment. The party applying to amend during the trial shall be required to show that the amendatory facts were unknown to him prior to the application, unless in its discretion the court shall relieve him from so doing."

This section is discussed in Lellman v. Mills, 15 Wyo. 149, 167, 87 P. 985, 990, where the court uses this language:

"It is well understood, however, that an amendment after judgment to conform a pleading to the proof will not in all cases be allowed. If allowed at all, the amendment should be in furtherance of justice, and the statute only permits such an amendment when it will not change substantially the claim or defense. It has been held improper to allow the amendment where the case was not tried upon the theory suggested by the amendment, or where it would enable the plaintiff to recover upon an utterly unconscionable demand, or where the admission of the evidence to which it is desired to conform the pleading was promptly objected to when it was offered ,upon the ground that it did not tend to support the allegations in the pleadings. 1 Ency. Pl. & Pr. 584-586."

Defendants say that they should have been permitted to amend their answers so as to plead estoppel "for the reason that the facts which justified the estoppel *first arose and were known* definitely to the defendants from the evidence introduced" at the trial. This simply

cannot be true. It is noteworthy that plaintiff declared that there was no authority in Curl to cash or negotiate checks or drafts or in any manner transact financial affairs of the plaintiff. A close reading of the transcript of the testimony, in all fairness and justice to the defendants, will disclose that any authority which Curl might have had relative to the financial affairs of the plaintiff was adduced by the defendants and not the plaintiff.

It is true that a principal is liable for the acts of his agent, apparently or impliedly authorized by the principal (2 Am.Jur., Agency ,§ 86, et seq.), as defendants assert in their brief but omit entirely to develop. 2 Am.Jur., Agency, § 95, p. 76, declares:

"A person dealing with a known agent is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers; such person must not act negligently, but must use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers."

A suggestion in the pleadings of one of the defendants was made to the effect that plaintiff was not the real party in interest, by virtue of the fact, apparently that plaintiff had been paid under the terms of a fidelity bond that was furnished to the plaintiff covering Curl in the sum of $2,500. The record discloses that this payment was made for items entirely distinct. If we think perfectly of the reason for this suit as the forgery of five checks in the total amount for which suit was brought, we must mark this case off from everything not itself. We likewise, must do the same with respect to the claim paid by the surety company. We cannot perceive them as identical or concerned in any way with each other.

To the same purpose is any contention that plaintiff is not the real party in interest. The plaintiff suffered

this injury through the thievery and wayward impulses of Curl who, evidently, had an exalted idea of high finances or a talent for such, anyway.

We are unable to discern any acts and conduct of the plaintiff by which the defendants suffered any injury. The record does not show that any officers of the credit company made investigations regarding the facts or circumstances connected with the operation or management of the body shop by Curl. The managers of the branch offices of the credit company made no investigations, although they were dealing in the financing of the plaintiff. In view of all of the facts and circumstances, it is evident that the credit corporation made no investigations, depending entirely upon the representations of Curl at a time when the sources from which that information could have been obtained were available to them. This, they failed to do.

Concluding this opinion, the finding of the trial court was a general finding and under that finding the judgment constitutes a finding of each specific thing supporting and substantiating the judgment of the court. This, we think, includes a finding that the plaintiff by its acts and conduct in its relationship to Curl is not precluded or estopped from asserting the forgery of Curl and is not estopped from enforcing the liability of the defendants in the suit. We must not overlook or disregard the rule, though expressed in various ways, that possession of a forged check or draft is wrongful. The law imputes illegality to it. When money has been collected on checks or drafts as under the circumstances developed here, the bank and the credit company should be held liable, for

they have received and now hold money belonging to the plaintiff. The fact that the checks in question did not reach the hands of the plaintiff is immaterial.

The judgment of the trial court is affirmed.

Affirmed.

Blume, C.J., and Harnsberger, J., concur.