[No. 9407. Department Two. December 21, 1911.]

EVAN WILES, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

TRIAL—EXAMINATION OF WITNESSES—EXCLUSION OF WITNESSES. It is not an abuse of discretion to grant plaintiff's request for the exclusion of defendant's witnesses, where it was indicated that a like request by defendant would have been granted if it had been made.

APPEAL—REVIEW—VERDICT. Where there is competent and substantial evidence to sustain plaintiff's case, its weight and sufficiency is for the jury.

CARRIERS—EJECTION OF PASSENGER—DAMAGES—EXEMPLARY DAMAGES—HUMILIATION—INSTRUCTIONS. In an action for wrongful ejection of an intoxicated passenger from a train, instructions allowing damages for mental suffering and humiliation, without distinguishing between rightful and wrongful ejection, are not prejudicially erroneous, where other instructions properly limited the recovery for a rightful ejection to damages unnecessarily inflicted, and another instruction correctly stated the elements for a rightful and wrongful ejection, and the instructions as a whole defined the duties and rights of the parties.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial for newly discovered evidence is properly denied, where it was based upon hearsay as to what two witnesses would testify to, and their affidavits were not produced, and no diligence in securing the evidence was shown.

APPEAL—REVIEW—MISCONDUCT OF JUDGE. Language of the judge calculated to prejudice the jury is not ground for a reversal where the record shows it was not in the presence of the jury.

NEW TRIAL—MISCONDUCT OF JURY—IMPEACHING VERDICT. A quotient verdict will not be set aside as arrived at by lot or chance, where it was not shown that there was an agreement to abide by the result, and there was no attempt to make the impeachment of the verdict complete.

CARRIERS—EJECTION—DAMAGES—EXCESSIVE VERDICT. A verdict for $523.93 for the wrongful ejection of a passenger from a train is excessive, and should be reduced to $300, where plaintiff suffered but slight rheumatism from exposure, and his loss of time and expenses did not entail a loss exceeding $200.

[1]Reported in 119 Pac. 810.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered May 2, 1910, upon the
verdict of a jury rendered in favor of the plaintiff, for
$523.95 damages for the wrongful expulsion of a passenger
from a railway car. Affirmed on condition of remitting
$223.95.

*C. H. Winders,* for appellant.

*M. J. McGuinness* and *Robert McMurchie,* for respondent.

Ellis, J.—Action to recover damages for an alleged
wrongful ejection of respondent from a passenger train of
appellant on December 1, 1909. The jury returned a ver-
dict in respondent's favor for $523.95. Appellant's motion
for new trial was overruled, and a judgment for that amount
was entered against the appellant. From that judgment,
this appeal was prosecuted.

It is conceded that the respondent was a passenger on the
train in question and had paid his fare in full for carriage
from Snohomish to Maltby, and that he was ejected from the
train by the conductor and brakeman before the train had
reached Maltby. By a careful examination of the evidence
we are satisfied that on every other material question of fact
there was a substantial, and in the main, a sharp conflict in
the evidence. If, therefore, the case was submitted to the
jury upon proper instructions, the verdict is conclusive of
the facts. It was practically admitted by counsel in argu-
ment that there was such conflict in the evidence as to re-
quire its submission to the jury, but it is urged that the ap-
pellant did not have a fair trial for reasons as follows: (1)
Error of the court placing appellant's witnesses under the
rule of exclusion after respondent's evidence in chief was in;
(2) error in denying appellant's challenge to the sufficiency
of the evidence; (3) error in giving certain instructions
and in refusing to give others requested; (4) error in over-
ruling appellant's motion for a new trial.

(1)  Counsel contends that the trial court abused its discretion in permitting attorney for respondent, in the presence of the jury, to demand that "the railroad's witnesses be excluded." The record, however, shows that the request was not couched in these, or other, objectionable terms. It was as follows: "At this time, the plaintiff asks that the witnesses for the defendant be put under the rule." The request was granted, and upon counsel for appellant objecting to the order, the court stated: "I have made it my universal custom to enforce the rule whenever asked." The court's remark indicated to the jury that if the same request had been made as to respondent's witnesses it would have been granted. The placing of witnesses under the rule is a matter within the discretion of the trial court. 21 Ency. Plead. & Prac., p. 983. While it is doubtless the better practice not to enforce the rule except on seasonable application, we cannot say, in view of the reason given by the court, that there was such an abuse of discretion as could have been prejudicial to the appellant.

(2)  When all of the evidence was in, the appellant challenged its sufficiency to sustain any verdict for respondent. The rule on such a motion is the same as that upon a motion for nonsuit. Where there is competent and substantial evidence to sustain the plaintiff's cause its credibility and sufficiency are for the jury. The motion was properly denied. *Spokane & Idaho Lum. Co. v. Loy*, 21 Wash. 501, 58 Pac. 672, 60 Pac. 1119; *Brookman v. State Insurance Co.*, 18 Wash. 308, 51 Pac. 395; *Rinear v. Skinner*, 20 Wash. 541, 56 Pac. 24; 38 Cyc. 1565 *et seq.*

(3)  The evidence was sharply conflicting as to whether or not the respondent was offensively drunk, and as to whether, prior to the ejection, he used profane and obscene language, thus forfeiting his rights as a passenger. It was also in direct conflict as to whether he was ejected in a swamp where the water came up to the railroad track, so that he either fell or was thrown into water about six feet

deep, or whether the expulsion took place at a point known as Fiddler's Bluff where the ground was dry. The appellant urged that the instructions contain fatal error as to the elements of damage in view of this evidence. Since the instructions must be construed together in order to determine their reasonable effect, we quote from those applicable to this phase of the case rather fully, lettering them for convenience, as follows:

"(a)   While the railroad company has a right to eject intoxicated, boisterous or disorderly persons from its train, such ejection must be done in a reasonable manner, at a proper time and place, and considering his condition, without exposing him to harm or imperiling his life, and if you should find from the evidence in this case that, at the point where the plaintiff was ejected from the train of the defendant, if he was ejected, the ground was submerged with flood waters, and that plaintiff was thrown by defendant into water approximately six feet in depth, then I instruct you that the plaintiff, whether wrongfully ejected or not, is entitled to recover whatever damages he may have sustained by reason of having been thrown into the water, if he was thrown into the water, by the agents of the defendant.

"(b)   You are further instructed that if you find, under the instructions heretofore given you, that the plaintiff was guilty of such disorderly and lawless behavior, upon the car in which he was travelling, as to justify the conductor in ejecting him, and that he was ejected at a place, although away from a station, where he could reasonably take care of himself, that then the defendant company would not be liable to him for any injuries that he sustained at any subsequent time endeavoring to reach his point of destination or in attempting to return to Snohomish.

"(c)   The instructions given to the jury are and constitute one connected body and series, and should be so regarded and treated by the jury; that is to say, you should apply them as a whole to the facts, that is, consider all of the instructions together as they may relate to the facts as shown by the evidence.

"(d)   If you should find, under the evidence and the rules of law given to you, that the plaintiff is entitled to recover, it will be your duty to assess the amount of damages

which, in your judgment, he should recover.   In estimating this amount, you may take into consideration any expenses actually incurred, the loss of time occasioned by the immediate effect of the injuries, and the physical and mental suffering caused by the injuries.   You may, in this respect, consider what, if any, compensation shall be allowed to the plaintiff for the humiliation, shame and disgrace from having been ejected from the train of the defendant, if such was done.

"(e)   The court instructs the jury that, if they find from the evidence that the defendant carrier was guilty of wrongfully ejecting the plaintiff from its train of cars, that the plaintiff is not limited in his recovery to the actual money lost by him by reason of such ejection, but he may recover damages for the humiliation and mental suffering which such ejectment may have caused him."

The appellant contends that the last two of the instructions above quoted authorized the jury to allow compensation for respondent's humiliation, shame, and disgrace, even if he was rightfully ejected from the train.   We cannot so read them in connection with the context.   The first quoted instruction (a), by a fair interpretation, limits the recovery in case of rightful ejection to whatever damages he sustained by reason of having been thrown into the water.   This is especially apparent when read in connection with instruction lettered (b), which plainly eliminates every injury consequent upon a rightful ejection, saving only by implication such as may have been unnecessarily inflicted at the time.   The last quoted instruction (e), refers only to a wrongful ejection and cannot by any reasonable construction be applied to anything else.   Instruction (d) is manifestly intended to cover the matter of damages generally without segregation as to rightful or wrongful ejection.   It closes with faulty language in  not limiting recovery for humiliation to a wrongful ejection only, but it was not reasonably calculated to mislead the jury, in view of the two instructions (a) and (e), which separately stated correctly the elements of damages in case of rightful and wrongful ejection, eliminating

the element of humiliation in the one case and including it in
the other. Moreover, in instruction (c) the court warned
the jurymen against laying stress upon isolated instruc-
tions and cautioned them to consider all of the instructions
together as they may relate to the facts.

This court has often held that, though segregated in-
structions or parts of instructions, when standing alone,
may not correctly state the law as applied to the evidence,
they will not be held ground for reversal where the instruc-
tions taken as a whole do correctly apply the law to the evi-
dence. *Seattle Gas & Elec. L. & M. Co. v. Seattle,* 6 Wash.
101, 32 Pac. 1058; *Roberts v. Port Blakely Mill Co.,* 30
Wash. 25, 70 Pac. 111; *Wolf v. Hemrich Bros. Brewing Co.,*
28 Wash. 187, 68 Pac. 440.

In *Cheichi v. Northern Pac. R. Co., ante* p. 36, 118 Pac.
916, the appellant here, as respondent there, successfully
invoked this rule where the language complained of, if read
alone, was positively erroneous as applied to the evidence.

In other instructions given, the court fairly rang the
changes, repeating again and again that a railway company
"has a right," and "it is its duty towards the public," and
"it is a duty which the law imposes," and "a duty owing to the
other passengers" to expel a disorderly passenger, and even
to eject him in anticipation of disorder without waiting for
any overt act. The jury was told not to weigh with too
great nicety the degree of force applied, and that if the
plaintiff was conducting himself in a disorderly manner the
conductor had the right to eject him at any reasonably safe
place, using only such force as was reasonably necessary. In
view of these instructions, and those quoted, it is manifest
that the error complained of could not have been prejudicial.

We have examined the instructions requested by the ap-
pellant the refusal to give which is assigned as error. We
find that one of them was actually given by the court [See
quoted instruction (b)], and the others so far as correct were
amply covered by the instructions given.

(4)   The affidavit of counsel for appellant in support of the motion for new trial stated, on hearsay in each instance, that two women who were in the car would testify to the respondent's having used boisterous language before his expulsion and that he was ejected at Fiddler's Bluff.   Their affidavits were not produced, nor even the affidavits of the persons who told counsel the women would so testify.   There was no sufficient showing of diligence to secure this evidence at the trial, and in any event the proffered evidence would be merely cumulative.

The affidavits also advert to what seems to have been a rather earnest argument between court and counsel on appellant's challenge to the evidence.   The record shows that this was not in the presence of the jury, but it is argued that certain language used by the court indicates prejudice which, in some manner, may have reached the jury.   We can assume nothing of this kind on mere innuendo or suspicion of counsel.   No such bias is discernible either in the court's instructions or in his rulings on admission of evidence.   If we seriously entertained a showing of this kind, we would spend much of our time trying courts rather than causes.

The affidavits of two jurors were produced, one stating generally that the verdict was arrived at by chance and lot without any specification as to what was done, the other stating, "That said verdict was arrived at by lot and chance, and that the several sums of money was voted by said jury, and then by process of division of the several sums so put down by the said members of the jury, by the mathematical process, the said sum of $523.93, the said verdict, was arrived at."

There was no statement that the jurors had agreed in advance to abide by the result.   Such an agreement is the very essence of the misconduct charged.   The burden of showing all the essential elements of the misconduct charged was upon the appellant.   This court has often held that the taking of

a quotient is not in itself misconduct, unless it appears that the jury had agreed in advance to be bound by it; even though the verdict returned be exactly or nearly the amount of the quotient. *Stanley v. Stanley*, 32 Wash. 489, 73 Pac. 596; *Conover v. Neher-Ross Co.*, 38 Wash. 172, 80 Pac. 281, 107 Am. St. 841; *Bell v. Butler*, 34 Wash. 131, 75 Pac. 130; *Watson v. Reed*, 15 Wash. 440, 46 Pac. 647, 55 Am. St. 899. In most jurisdictions a juror will not be permitted to impeach his own verdict, and while it is permitted by statute in this state, such an impeachment must be complete and conveyed in no uncertain terms.

It is also contended that the judgment is excessive, and under the evidence we think this contention well founded. Respondent's testimony shows that, as a result of being thrown into the water and the exposure thereafter, he suffered from rheumatism for about two months. It is manifest, however, that his indisposition was slight. He did not deem it necessary to consult a physician, but did take some medicine and a number of turkish baths. He testified that his actual expenses were about $25, and that when at work he had been earning about $4 a day. His loss of time and actual expenses could not much exceed $200. It seems plain that the jury was influenced by passion or prejudice. Under the evidence, we think that $300 would be an ample recovery.

The cause is remanded with direction to vacate the judgment on return of the remittitur; and if respondent, within twenty days, in writing remit from the verdict the sum of $223.95, the court shall enter judgment for $300. Otherwise a new trial shall be granted. The appellant will recover its costs in this court.

DUNBAR, C. J., CROW, and CHADWICK, JJ., concur.