CLAXTON v. PAGE.

No. 29549.   Feb. 10, 1942.

*124 P. 2d 977.*

G. E. Conway, of Tulsa, for plaintiff in error.

M. A. Breckinridge, of Tulsa, for defendant in error.

DAVISON, J. This is an action for $5,000 compensatory damages for personal injuries alleged to have resulted from the collision of two automobiles on the streets of the city of Tulsa on March 26, 1938. It was instituted in the court of common pleas of Tulsa county by Lizzie Mae Claxton, as plaintiff, against W. E. Page and Viola Buffington, as defendants, on August 31, 1938.

A jury was impaneled to try the case on March 28, 1939. At the conclusion of the evidence the trial court directed a verdict for the defendant W. E. Page. The liability of Viola Buffington was determined by the jury and the amount of recovery as against her fixed at $1,750.

In this appeal, the plaintiff, as plaintiff in error, complains of judgment of the trial court entered on the directed verdict and insists that there was conflicting evidence respecting a controlling issue of fact upon which the liability of the defendant Page depends, and that that issue should have been submitted to and determined by the jury.

At the time of the collision the plaintiff was riding in one of the automobiles, and the other, which belonged to the defendant W. E. Page, was being driven by Viola Buffington, one of his negro servants, who was accompanied by her brother-in-law, Ollie Parlor, another negro servant of Page.

The plaintiff instituted and prosecuted the action on the theory that the collision was due to the negligence of Viola Buffington. She sought to hold the defendant Page liable for the negligent acts of his servant principally upon consideration and application of the doctrine respondeat superior. However, there is in the pleading, proof, and argument some intimation that he should also be held liable on other theories. Consideration and disposition of these interpolated theories will be deferred for the present.

No question is herein presented as to the negligence of Viola Buffington and no controversy is here involved as to the amount of recovery against her.

The sole issue to be determined in this appeal is whether the trial court erred in deciding that Page was not liable as a matter of law.

A master is liable for the negligent acts or omissions of his servant on consideration of the doctrine of respondeat superior only when the latter is acting in the scope of his employment. Stumpf et ux. v. Montgomery, 101 Okla. 257, 226 P. 65, 32 A.L.R. 1490.

When the question presented on motion for a directed verdict is whether a servant was at the time of an injury to a third person occasioned by his negligence acting within the scope of his employment, and the evidence directly bearing on the point is conflicting or

such that conflicting inferences may be drawn therefrom and a sustainable conclusion could be announced by verdict adverse to the party presenting the motion, the motion should be overruled and the issue submitted to the jury. Phillips Petroleum Co. v. Ward, 181 Okla. 462, 74 P. 2d 614.

After a careful examination and analysis of the evidence in this case we have concluded that the proof disclosed by the record together with the inferences that might be reasonably drawn from the same would have supported a verdict and judgment in favor of the plaintiff against the defendant Page, had the issue been submitted to the jury and determined against him.

The plaintiff, as a part of her evidence in chief, offered proof that Viola Buffington was an employee of Page and was driving his car at the time of plaintiff's injury. This proof created a legal presumption that she was then acting in the scope of her employment. This presumption dispensed with the necessity of further proof on the part of the plaintiff to make a prima facie case. It was of controlling importance on the point until the defendant Page offered proof to the contrary. The presumption was, however, rebuttable and when the defendant offered proof to the contrary, he became entitled to have the issue submitted to the jury. Phillips Petroleum Co. v. Ward, supra; Wigmore on Evidence (3d Ed.) para. 2490 et seq. He was not, however, entitled to a directed verdict unless the proof was uncontradicted in all material respects, free from inherent improbabilities, and sufficiently clear and convincing that but one conclusion could be drawn from its consideration. Phillips Petroleum Co. v. Ward, supra. Notice, also, Judson v. Bee Hive Auto Service Co., 136 Ore. 1, 297 P. 1050, 74 A.L.R. 944, 5 Am. Jur. 874; Crowell v. Duncan, 145 Va. 489, 134 S. E. 576, 50 A.L.R. 1425; White v. Roach, 165 Okla. 143, 25 P. 2d 333; Carlisle v. State, 178 Okla. 231, 62 P. 2d 617; Davis v. Wyskup, 97 Okla. 239, 223 P. 357; Fleming v. Drew, 88 Okla. 160, 212 P. 306.

The defendant's (Page's) proof was sufficient to entitle him to go to the jury, but insufficient to entitle him to a directed verdict.

In refutation of the presumption and for the purpose of showing that his servant was not at the time of the automobile collision acting within the scope of her employment, the defendant Page testified in substance that Viola Buffington had been working for him about two and one-half years: that she was employed principally as a cook, but was also authorized to drive his cars for the purpose of taking his daughter to school and on errands for his wife. He testified he had not given her permission to use his car on the day in question, but stated he had never denied her the right to drive his cars or attempted to prevent her from using them.

Viola Buffington testified that she was employed principally as cook, and that in connection with her duties as such she "saw to the restocking of that (the Page) kitchen" with groceries and other necessary articles; that generally the groceries and other articles were delivered pursuant to order by phone, but that she on occasion procured the groceries at the market and brought them in one of the Page cars to the Page residence. Such occasions, however, according to her testimony, were only when she was on her daily trips to take the Pages' daughter to school or bring her home. In this connection she testified she had authority to use the car, but according to her literal testimony she did not have authority to use the automobile of her master to get groceries except in connection with trips to and from school. Viola also testified that on the day in question she was using the car without permission to visit her mother, who was ill, and that she was on the return trip. When the accident occurred she was accompanied by her brother-in-law, who was the yard man at the Page residence. He also had been at her mother's residence and had, as she testified, joined her there.

She also testified that she did not have any packages or groceries in the car,

but in rebuttal the plaintiff produced the evidence of two witnesses who were at the scene of the collision. They looked in the Page car and saw two large sacks of groceries, with green vegetables protruding therefrom.

In this connection it appears that the Page servants ate at the Page home. There is nothing in the record to show any occasion for their transporting groceries on behalf of themselves or anyone other than the master. The scene of the accident was on the regular route from the grocery store to the Page home. It was also the route that would be used by Viola Buffington if she was, as she testified, using the car solely to visit her mother. Thus the place of the accident was consistent with either hypothesis—that is, use by her for her own mission as she stated, or use for her master to procure groceries for his household.

It must be remembered in evaluating the foregoing evidence that it is not necessary to liability of the master that he should have expressly authorized the particular act or conduct which occasioned the injury complained of. It is sufficient if it was within the scope of employment as determined by the express agreement of the parties or by reasonable implication for their conduct. The basis of liability is stated in 35 Am. Jur. 981, as follows:

"All authorities approve the generalization that the test of liability on the part of the defendant employer is whether the employee's injurious conduct was authorized by the master or whether the wrongful act was one which was within the scope of the wrongdoer's employment. But the question whether any particular act is within the authority which has been impliedly conferred upon the employee is one which the courts have found oftentimes to be difficult of solution. In this respect, the decisions hold that where authority to act for another has been conferred without special limitation, it carries with it, by implication, authority to do all things that may be necessary to its execution; and where the authorization involves the exercise of the discretion of the employee, the use of such discretion is a part of the thing authorized and, where exercised, becomes, as to third persons, the discretion and act of the employer. This is true although the employee has departed from the private instructions of the employer, provided he was engaged at the time in doing his employer's business and was acting within the general scope of his employment. It is not the test of the employer's liability for the wrongful act of the employee, from which injury to a third person has resulted, that he expressly authorized the particular act and conduct which occasioned it. In most cases where the employer has been held liable for the negligent or tortious act of the employee, such act was not only without express authority but was, or, if known to the employer, would have been, positively disapproved by the employer."

And in 5 Am. Jur. 712, it is said:

". . . Assuming that a relationship of employer and employee exists between the driver of the automobile causing the injury and the person sought to be held responsible, the question whether the driver, at the time of an accident, was acting within the scope of his employment generally involves an inquiry into the contract of employment and the relation of his acts at the time of the accident to the service he actually performed pursuant to his employment. . . . However, any use of a car which is reasonably incidental to the performance of the duties with which the employee is charged is deemed to be within the scope of his employment. The mere fact that the employee may have disobeyed certain of the master's commands does not necessarily show that he is acting outside the scope of his employment, so as to relieve the master from liability for injury done by the negligent handling of the car."

And upon the same point it was said by this court in paragraphs 7 and 8 of the syllabus in Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1:

" 'The general rule is that a master or principal is liable for the tortious acts of his servant or agent where such acts are incidental to and one in furtherance of the business of the master or principal, and this is true, although the servant or agent acted in excess of the authority conferred upon him, or

willfully or maliciously committed the wrongs.' "

" 'In general terms it may be said that an act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' "

Considering the evidence in this case in the light of the foregoing authorities, we are of the opinion, and hold, that the jury would not have gone beyond the realm of reasonable inference had it determined under appropriate instructions that the servant, Viola Buffington, had the express authority to use the automobile of her master to transport groceries to his home in connection with her duties to procure the same, and that by implication the scope of her employment comprehended the possible and discretionary use of the car for that purpose, even though on the same trip she was not transporting her master's child. And we also conclude that in view of the circumstances herein the jury might well have accepted the contradictory evidence to the effect that she had groceries in the car and inferred that those groceries were being transported to her master's home for her master. It follows that the jury should have been given an opportunity to pass on these questions.

Our attention has been called to Bascom v. Hodges, 184 Okla. 355, 87 P. 2d 124; Foster v. Colonial Stores, Inc., 181 Okla. 414, 74 P. 2d 114; Fairmont Creamery Co. v. Carsten, 175 Okla. 592, 55 P. 2d 757; Barall v. McDonald, 172 Okla. 276, 44 P. 2d 997. We find nothing in the cited cases contrary to the views herein expressed.

In Foster v. Colonial Stores, Inc., supra, groceries were also in the car of the alleged agent, but the evidentiary significance of that proven fact was entirely different. There, as pointed out in the opinion, the groceries might have been those of the servant himself for his own use in his own home. No such inference is possible under the evidence herein. There the automobile was the automobile of the alleged servant, a private car not maintained or used in connection with the master's business. Here the car of the master was involved. If in that case the servant, as an accommodation to an acquaintance who was also a customer, undertook to transport groceries to him (a character of service which the store did not undertake), he was acting in the same capacity that any other person, not employed by the store, would be acting if he undertook a similar "chore" for a friend. Neither of these possible inferences was consistent with liability of the employer.

In Fairmont Creamery Co. v. Carsten, supra, the proof was insufficient to show the relationship of employer and employee.

In Barall v. McDonald, supra, and Bascom v. Hodges, supra, the evidence was found to establish that the servant was not, at the time of the infliction of the injury, acting in the course of his employment.

The defendant asserts that the proof concerning the groceries should have been produced as a part of the plaintiff's evidence in chief rather than as rebuttal evidence. Assuming without deciding that this assertion is correct as an abstract theory, it still does not follow that the proof could not be admitted and considered as direct evidence, since control of the order of proof in this respect is within the discretion of the trial court and no abuse of discretion here appears. Fourth subdivision of section 359, O. S. 1931, 12 Okla. St. Ann. 577; Tancred v. Holuby, 124 Okla. 97, 254 P. 75.

In her pleading and proof as well as in her argument plaintiff has made various references to the possibility of liability on the part of the defendant Page

existing on the theory that Viola Buffington was a known careless driver, on the theory that the car was in a defective condition, and on the theory that an automobile is a dangerous instrumentality. We do not deem it proper to lengthen this opinion with an academic discussion of these various theories of liability, but do deem it proper to suggest that they are of doubtful merit in this case, and suggest that counsel carefully investigate them before reassertion in the subsequent trial hereof.

The judgment is reversed, with directions to grant a new trial.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, and HURST, JJ., concur. WELCH, C. J., and GIBSON, J., dissent.

WELCH, C. J. (dissenting). I think the majority opinion gives too much prominence to the mere presence of groceries and vegetables in the automobile, and that in that respect the reasoning of the opinion is contrary to the better reasoning in Foster v. Colonial Stores, Inc., 181 Okla. 414, 74 P. 2d 114. I think the trial court here correctly followed the rule of the above-cited case.

I am authorized to say that Mr. Justice GIBSON concurs in these views.