## FORE v. McMILLIAN.
### No. 35990.

Supreme Court of Oklahoma.
July 7, 1954.

Kerr, Lambert, Conn & Roberts, Ada, for plaintiff in error.

Joe B. Thompson, Ardmore, Earl E. LeVally, Healdton, for defendant in error.

ARNOLD, Justice.

A. H. McMillian, doing business as McMillian Construction Company, brought this action in the District Court of Carter County against Wilson Fore, doing business as Wilson Fore Truck Lines, for property damages arising out of the collision of Mc-Millian's truck-tractor with semi-trailer attached on which was loaded a bulldozer and a truck owned by defendant and operated by his employee Homer Allen Kent.

At the beginning of the trial defendant stipulated that at the time of the collision complained of Homer Allen Kent was in his employ and was driving defendant's

truck; that the truck bore defendant's name on it; that the collision occurred because of the negligence of Kent; that the truck of plaintiff was damaged in the collision and that the charges paid by plaintiff for the repair thereof were reasonable and that plaintiff had not been reimbursed therefor; that at the time of the collision defendant's employee, driver of his truck, was in a state of intoxication and had a woman in the cab of the truck riding with him.

In addition to the above stipulated matters, and pertinent to the sole issue raised on appeal, plaintiff's evidence reasonably tends to show that Homer Allen Kent applied for work at defendant's office and yard in Healdton as a truck driver; that Fore told him he did not need any drivers at the time but would in a day or so, but in the meantime he needed swampers and if Kent wanted to swamp on a truck to report the next morning for work; that Kent reported to defendant's office the next morning and was told to help a truck driver by the name of Patrick that day; that Kent got into the truck with Patrick and was told by Patrick that they were to go north of County Line to move a swabbing unit; that as they left Healdton going north Patrick took a half-pint bottle of whiskey from the glove compartment and both he and Kent drank it; that further up the road they stopped and bought two more half pints, which they drank; that they loaded the derrick, delivered it to the place where it was supposed to go, and started back to defendant's yard in Healdton; that on the way they bought another half pint of whiskey which they drank; that on their return to the yard about 2:00 p. m. they were instructed to eat lunch, then go north of Healdton, pick up a tank, and deliver it to a lease known as Williams No. 1; that they got the tank, loaded it, and started back on their way to deliver the tank; that on the way Patrick, the truck driver, picked up a girl hitchhiker; that on down the highway they passed the whiskey place, stopped, and got some more whiskey, which the three of them drank; that they continued on down the highway (which was also the highway back to Healdton) to the place where they had to turn off the highway onto a county road to get to the place where the tank was to be delivered; that they went down this county road to a spot about half a block from where they were supposed to leave the tank; that Patrick stopped the truck in the middle of the road and he and the girl got out; that a car came up behind the truck and couldn't get by; that Kent pulled the truck off the main road into the turn-off road to the lease where the tank was to be unloaded just enough to get the back end of the truck off the section line road; that in about 5 minutes the truck driver and the girl came back to the truck; that the truck driver said he would go up to the rig to see where the tank was to be spotted because the road was very muddy; that from that time on Kent did not remember anything that happened; that he did not see the truck driver after that time; that he did not recall driving the truck back towards Healdton or having the accident; that the accident happened on Highway 76 about 4 miles south of the Williams lease, which was the only road back to Healdton; that at the time of the accident the tank was still on the truck; that Kent was arrested at his home the next morning on a charge of drunken driving, to which charge he plead guilty and was sentenced to and served a term in jail therefor.

Defendant's evidence pertinent to the issue here raised reasonably tends to show that Kent was employed as a helper on the truck to assist in loading and unloading materials hauled; that Kent was never given any instructions other than that he was to go with Patrick and do what Patrick told him; that the place where the tank was to be delivered was 4 miles north and west of where the accident occurred; that after the accident the tank was left beside the road until the next morning when another employee picked it up and took it to the Williams lease; that the tank was to be delivered to a location for a well but there was no well then drilling on the location and no one was at the location where it was to be delivered; that drilling was supposed to start in a few days and the tank was to be delivered beforehand so it

would be available when needed; the truck driver, Patrick, denied that he and Kent drank any liquor; denied that he picked up the girl hitchhiker; stated that when they got to the lease with the tank a truck was stopped in the road blocking their way; that he stopped defendant's truck behind the stalled truck and told Kent his legs were hurting him and he would get out of the truck and rest until the other truck got out of the way; that he laid down on the side of the road and went to sleep; that when he woke up about two hours later the truck was gone; that he waited a while for the truck to return, then walked a mile back down the section line road to the highway, caught a ride on a dirt truck to the scene of the accident, about four miles south on the road to Healdton; that there was nobody around the location where the tank was to be delivered, though there was a rig running one location away; that the reason he got out of the truck and went to sleep was because he was tired, not because he had been drinking, that he had not had a drink all that day except one drink before breakfast that morning; that Kent never asked for permission to drive the truck and he never gave Kent permission to drive.

At the close of the evidence defendant demurred to the evidence and moved for a directed verdict, both of which motions were overruled. At 'defendant's request in addition to a general verdict the jury was instructed to answer three special interrogatories propounded by the defendant. The jury answered these interrogatories stating that they found that Kent was driving defendant's truck with his knowledge and consent at the time of the collision; that Kent was acting in furtherance of defendant's business and at the time of the collision he was not on a frolic of his own. The jury returned a general verdict in favor of plaintiff, judgment was entered thereon, defendant's motion for new trial was overruled, provoking this appeal.

Defendant here makes the sole contention that the uncontradicted proof established that Kent was acting outside the scope of his employment with defendant at the time of the accident and therefore the court erred in refusing to direct a verdict for defendant.

From the evidence above outlined the jury could reasonably have inferred that after the truck driver left the truck (and according to his story went to sleep on the side of the road), Kent, finding no one at the location to show him where to unload the tank or to help him unload same, decided that the only thing to do was to take the tank and truck back to defendant's yard for further instructions as to its proper disposal. The opposite inference, that Kent was on a frolic of his own, could likewise have been reasonably drawn from all the circumstances.

When the question presented on motion for directed verdict is whether a servant was at the time of an injury to a third person occasioned by his negligence acting within the scope of his employment and the evidence bearing on the point is conflicting or such that conflicting inferences may be drawn therefrom and a sustainable conclusion could be announced by verdict adverse to the party presenting the motion, the motion should be overruled and the issue submitted to the jury. Phillips Petroleum Co. v. Ward, 181 Okl. 462, 74 P.2d 614; Claxton v. Page, 190 Okl. 422, 124 P.2d 997.

Inasmuch as conflicting inferences could reasonably be drawn from the evidence in this case the question was properly submitted to the jury and its finding thereon and verdict entered in accordance therewith are binding on this court.

Affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.

HALLEY, C. J., and O'NEAL, J., dissent.