Strafford,
No. 4964.

Carolyn J. Peabody Chalmers, *Adm'x*

*v.*

Harris Motors Inc.

Argued March 6, 1962.

Decided April 3, 1962.

*Fisher, Parsons & Moran* and *Robert A. Carignan* ( *Mr. Harold D. Moran* orally), for the plaintiff.

*Burns, Bryant & Hinchey* and *E. Paul Kelly* (*Mr. Kelly* orally), for the defendant.

LAMPRON, J. The deceased, George B. Peabody, eighteen years of age, and another passenger named Dandrow were riding in an automobile owned by the defendant and driven by its salesman, O'Leary. They were proceeding from Rochester to defendant's garage in Dover on the evening of July 1, 1955, when shortly before 7:30 the car left the road and struck a set of trees. Peabody died as a result of the injuries received in the accident.

The first issue presented is whether the deceased was guilty of contributory negligence as a matter of law.

O'Leary and Dandrow left defendant's garage after noon on that day and proceeded to Rochester. As they were entering "Eric's," a drinking establishment in that city, between 1:30 and 2:00 they met Peabody. From that time until after 6:00 P. M. they consumed between them various quantities of beer, whiskey and mixed drinks. There was evidence that the drinks influenced Peabody more than they did his companions and that the steward at the V.F.W. club where they had gone "shut off" their table because of his intoxicated condition. There was testimony that he became sick and vomited in the doorway of that club. There was evidence that a blood sample taken from him at an unspecified time after the accident had an alcoholic content of .18% by weight.

When the steward "shut off" the table sometime after four o'clock he testified that although O'Leary had been drinking he figured he was "in perfectly good condition to take care of himself." There was evidence that sometime thereafter he drove a lady companion home to supper. Later in the early evening when she saw Peabody, Dandrow and O'Leary at "Eric's" she did not know for sure whether they were under the influence of liquor "but I would say they had too much to drink to be driving a car."

It was agreed that a sample of blood taken from O'Leary at

8:30 P. M. on the evening of the accident had an alcoholic content of .14% by weight. There was evidence that based on the rate at which an individual oxidizes alcohol in his blood, the alcoholic content of O'Leary's blood by weight at 7:30 P. M. would have been .154% and .168% at 6:30 P. M. It was testified however that because of the factor of "consumption tolerance" based on prior drinking habits of the individual, a man "of long-standing drinking habits" could have a lot more to drink and have a better appearance than an eighteen-year-old boy who had drunk much less. It was further testified that the means of determining by a sample of blood how much a person has had to drink does not take into account this factor of "consumption tolerance." There was evidence that O'Leary had previously lost time from work because of his drinking.

In deciding to ride with O'Leary and during the trip, Peabody was under duty to use that care for his own safety which a reasonably prudent person would exercise under like circumstances. *Charbonneau* v. *MacRury*, 84 N. H. 501. Among the circumstances to be considered in applying the standard of reasonable care to his conduct were his age and stage of development. *Shimkus* v. *Caesar*, 95 N. H. 286, 288. Incapacity to use care because of his own intoxication would not be a factor in judging his conduct as he was under duty to use the care of a sober person in the same circumstances. *Small* v. *Railroad*, 85 N. H. 330, 332.

It is usually a question of fact for the jury whether a driver was so far intoxicated as to affect his ability to operate the car and whether his passenger had any cause in the exercise of ordinary care to be apprehensive on that account. *Vidal* v. *Errol*, 86 N. H. 1, 3, 4; *Packard* v. *Quesnel*, 112 Vt. 175; 4 Blashfield, Cyclopedia of Automobile Law and Practice, s. 2453. In order to rule that Peabody was chargeable with contributory negligence as a matter of law, the situation must have been such that no reasonable man could fail to find that O'Leary was so much under the influence of liquor at the time that Peabody, or a sober person under like circumstances, should have been aware of it and either have refused to ride with him or been more vigilant during the trip and that O'Leary's intoxication was a contributing cause of the accident. *Boston* v. *B. & M. &c. Inc.*, 91 N. H. 392.

Under RSA 262:20 the percentage by weight of alcohol in the blood of a person is not conclusive but to "be considered with other competent evidence" in determining whether a defendant is inno-

cent or guilty of a criminal charge of operating or attempting to operate a motor vehicle under the influence of intoxicating liquor. By its terms an alcoholic content of less than .15% by weight is not to be given *prima facie* effect in so determining and a content of .15% or more is *prima facie* evidence to be considered with other competent evidence in arriving at a conclusion.

Interpreting most favorably to the plaintiff the result of O'Leary's blood test together with all the other evidence hereinbefore detailed we cannot say as a matter of law that Peabody's injuries and death resulted from his carelessness in accepting a ride and traveling with O'Leary. Rather we are of the opinion that it was for the jury to determine whether the defendant had sustained the burden imposed on it of proving this was the fact. *Vidal* v. *Errol*, 86 N. H. 1, 3, 4; *Boston* v. *B. & M. &c. Inc.*, 91 N. H. 392, 394.

The second question is whether it was error to submit to the jury the issues of defendant's knowledge of O'Leary's tendencies, habits, or condition existing on the day of the accident.

Green, a salesman employed by the defendant, testified that prior to the day of the accident O'Leary had lost time from work at the garage because of drinking. "After he got his pay. I am not sure how many days a week or weeks a month, but he would be off a day at a time." He testified also that three or four times he had seen O'Leary when he showed signs of drinking while he was at work. He stated that once or twice before July 1, 1955 he discussed with Harris, O'Leary's drinking and being out of work.

There was evidence that O'Leary with three others consumed a punch containing a fifth or a quart of gin beginning the night before the accident and ending at about three or three-thirty in the morning. It was also testified that O'Leary and Dandrow left York Beach that morning and arrived at defendant's garage about ten minutes before one in the afternoon of the day of the accident and that Harris was there. There was further evidence that O'Leary's shirt was then all covered with lipstick and that his eyes were bloodshot, and that he said in Harris' presence that he had to go to Rochester to pick up Peabody and Harris told him to "bring him right in and don't fool around." Green testified that Harris told him "Keep your eyes on him."

The charge was based on the principle of law that the owner of a motor vehicle may be held liable for an injury to a third person resulting from the operation of a vehicle which he has entrusted to one whose incompetency to operate it, because of intoxication,

addiction to liquor or otherwise, is know or should have been known to him. *North Side Chevrolet Inc.* v. *Clark*, 107 Ind. App. 592; *Gulla* v. *Straus*, 154 Ohio St. 193; Annot. 168 A.L.R. 1364, 1365, 1370. We are of the opinion that the evidence warranted the Court's charge which taken as a whole adequately stated the applicable law and properly left it to the jury to determine if the facts came within its application. *Cyr* v. *Sanborn*, 101 N. H. 245, 248.

Lastly the defendant contends that it must be found as a matter of law that O'Leary had so deviated from the normal course of his employment that it had been abandoned and never resumed thus relieving the defendant of any liability for his negligence toward Peabody.

There was evidence to support the following findings. Peabody wanted to buy a car and had money with which to buy one. Three days before the accident he was in defendant's garage with O'Leary looking at an automobile defendant had for sale. On the afternoon of the day of the accident O'Leary left defendant's garage with one of its cars stating to Harris that "he had to go to Rochester to pick up Peabody." He was to bring him back with an adult to complete the sale of the car he had been looking at. O'Leary was with Peabody from shortly after he and Dandrow arrived in Rochester until the accident occurred. While they were at the V. F. W. club, Peabody talked with O'Leary about the car he had showed him. At the time of the accident O'Leary was taking Peabody to defendant's garage "for some business . . . I imagine it was something to do with cars, but I don't know."

On this evidence the jury could conclude that O'Leary spent the afternoon with his prospect, Peabody, endeavoring to close the sale of one of defendant's cars; and further that at the time of the accident O'Leary was on his way to defendant's garage with Peabody to complete the transaction and that any deviation from the course of employment was terminated, making defendant liable for O'Leary's negligence. *Allison* v. *Company*, 98 N. H. 434, 439, 440; *Boston* v. *B. & M. &c. Inc.*, 91 N. H. 392, 396; Annot. 51 A. L. R. 2d 8, 14.

The fact that an employee drinks or becomes intoxicated while going about his work does not in and of itself compel a conclusion that he was outside the scope of his employment. 51 A. L. R. 2d 8, 31. Nor does evidence of drinking of itself necessarily bar a finding that a deviation from the course of employment was terminated. *Allison* v. *Company*, 98 N. H. 434, 439.

Each situation has to be judged in the light of the nature of the employment and the circumstances surrounding the particular acts. *Neville* v. *Adorno*, 123 Conn. 395, 400. It is only when the conduct is clearly shown to be either within or without the scope of the employment that its effect on the employer's liability can be determined as a matter of law. 5A Am. Jur., Automobiles and Highway Traffic, *s.* 636, *pp.* 630, 631. That is not the situation in this case.

We have considered defendant's supplemental memorandum to the effect that defendant owed no duty to Peabody who was in a far superior position than it was with respect to O'Leary's appearance and conduct on the day of the accident. In our opinion this raises no issue which has not been previously considered herein. *Boston* v. *B. & M. &c. Inc.*, 91 N. H. 392.

*Judgment on the verdict.*

All concurred.